**AVENUES IN LEATHER, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Slip Op. 98–54.
Court No. 94–12–00794.

United States Court of
International Trade.

April 24, 1998.

---

Fitch, King and Caffentzis (James Caffentzis), New York, NY, for plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney–in–Charge, International Trade Field Office; Amy M. Rubin, Commercial Litigation Branch, Civil Division, Department of Justice; Mark G. Nackman, Office of the Assistant Chief Counsel, U.S. Customs Service, for defendant.

*OPINION and ORDER*

NEWMAN, Senior Judge.

### INTRODUCTION

The issue presented concerns the proper tariff classification and rate of duty to be assessed by the United States Customs Service ("Customs") on merchandise described by the plaintiff as "folios" and imported during 1993. Plaintiff brings this "test case" challenging Customs' classification of the folios upon liquidation of the entries. Jurisdiction is predicated on 28 U.S.C. § 1581(a), and, therefore, Customs' classification is subject to *de novo* review by this court in accordance with 28 U.S.C. § 2640. Currently before the court are cross-motions for summary judgment.

Customs classified the merchandise in question under subheading 4202.11.00 of the Harmonized Tariff Schedule of the United States ("HTSUS"), and assessed duty at the rate of eight per centum *ad valorem*. Subheading 4202.11.00 provides:

| | |
|---|---|
| 4202 | Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, toiletry bags, knapsacks and back packs, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composite leather, of sheeting of plastics, of textile materials, of vulcanized fiber, or of paperboard, or wholly or mainly covered with such materials or with paper: Trunks, suitcases vanity cases, attache cases, briefcases, school satchels and similar containers: |
| 4202.11.00 | With outer surface of leather, of composition leather, or of patent leather ................8% |

In support of Customs' classification, defendant maintains that the imported articles are *ejusdem generis* with the exemplar items listed under Heading 4202 because they share the same common characteristics and purpose of the exemplar items.

Plaintiff, however, asserts that the imported goods are properly dutiable under Chapter 48 at the rate of four percentum *ad valorem* under subheading 4820.10.20 of the HTSUS, because they are actually diaries or personal organizers used for time management. Subheading 4820.10.20 reads:

| | |
|---|---|
| 4820 | Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles, exercise books, blotting pads, binders (looseleaf or other), folders, file covers, manifold business forms, interleaved carbon sets and other articles of stationery, of paper or paperboard; albums for samples or for collections and book covers (including cover boards and book jackets) of paper or paperboard: |
| 4820.10 | Registers, account books, notebooks, order books, receipt books, letter pads and similar articles: |
| 4820.10.20 | Diaries, notebooks and address books, bound; memorandum pads letter pads and similar articles ...................4% |

Alternatively, plaintiff claims classification under subheading 4820.10.20 invoking the General Rules of Interpretation, GRI 3(b), and contending that the essential merchandise is *prima facie* classifiable under both competing provisions, but that the essential character of the imported goods is imparted by their planner-like features. As a further alternative argument, plaintiff posits that in the event that GRI 3(b) is inapplicable to the classification of the goods, then under GRI 3(c) the articles must be classified under the heading that occurs last in numerical order among those headings which equally merit consideration. Defendant responds that classification under Chapter 48 is precluded by Chapter Note 1(g) which requires that articles which can be classified under Heading 4202 must be excluded from classification under Chapter 48. Therefore, it is unnecessary to reach the arguments posed under GRI 3. In any event, the government argues, Customs' classification was also correct under GRI 3.

### THE FACTS

There is no genuine dispute as to the following material facts.

1. The disputed merchandise consists of four kinds of leather cases or folios incorporating a three ring looseleaf binder mechanism, representative samples of which have been identified as Defendant's Exhibits E, G, H and I.

2. Defendant's Exhibit E (Style 3345) is marketed by plaintiff as part of its "Pro-Folio" line. Exhibit E consists of a zippered case holding an 8½ by 11 inch lined notepad. This exhibit also features two retractable

padded handles and a zipper closure extending around three sides. The exterior is of a nappa leather and the interior is of a different leather material. When closed, the article measures 14¾ inches by 11 inches by 3 inches. The interior of the article is fitted with a variety of pockets and compartments. An expandable two compartment folio section is secured by double snap tabs and covers all of one interior side of the case. The front interior panel of the folio is fitted with three pen compartments, a zippered utility pocket and two pockets with hook and loop flap closures. The zippered pocket and one hook and loop pocket measure 6 inches wide by 4 inches deep. The second hook and loop pocket measures 3¾ inches wide by 4 inches deep. The smaller hook and loop pocket is of the kind intended to contain a standard 3½ inch floppy disk. The opposite interior side of the case is fitted with a slot containing a standard 8½ inch by 11 inch lined writing pad. The interior center portion, the spine, is fitted with a permanent three ring binder mechanism. The exterior sides of the article each contain an open pocket which is the full size (height and width) of the case. The notepad is bound at the top with staples, adhesive and paper binding. The left edge is perforated with three holes in a manner that allows the pages to be removed from the pad and placed on the rings of the binder. The pad has a plasticized paper cover and the interior of the pad cover is imprinted with a three year calendar. The case contains no other paper inserts.

3. Defendant's Exhibits G, H and I (Styles 3343, 3345 and 3349) are each identified as part of plaintiff's "Present–O–Folio" line. Except for variations in color and the exterior leather material, the three articles are practically identical. Each case measures 10½ inches by 13½ inches by 1¾ inches and has a zipper closure which extends around three sides. The exterior is either a natural leather or a plastic coated leather material. The interior is either leather or imitation leather. The interior is fitted with various pockets and compartments. One side has an accordion folio section on the interior which has two compartments and two gussets and is the full size of one side of the case. This folio section is large enough to contain small books or newspapers. The front panel of the folio is fitted with two pen/pencil holders, two pockets, each having a hook and loop flap closure and designed to hold 3½ inch floppy disks or other small articles, a pocket for business cards, and a zippered utility security pocket which measures 10 inches wide by 5½ inches deep. This fitted front panel is similar to those frequently found in briefcases, attache cases, and other executive business cases. The opposite interior side is fitted with a slot designed to contain a standard 8½ by 11 inch pad. Exhibit H has additional slots under and horizontal to the pad slot and under the opposite folio section. These slots are intended to hold the removable plastic covered binder which slides into the case so that the spine of the binder runs along the spine of the case. Exhibits G and I do not have the removable binder, but instead the binder assembly is sewn into the spine of the case. The exterior sides of all of these cases are fitted with an open pocket which measures the full size, height and width of the side of the case. Each of these articles has a leather padded carrying handle fitted to the exterior spine. Each case has a writing pad inside, like exhibit E, although in Exhibits G and I the writing pad has a one year calendar on the inside of the cover and does not have pre-cut holes for securing the pages in the binder mechanism.

4. All four of the articles in question can be carried by the handles or under the arm.

5. The merchandise is sold in its imported condition, without any paper inserts other than the notepad. However, paper inserts consisting of lined monthly calendars with tabs and lined pages designed for entries of names, addresses and phone numbers, are available for purchase from other companies for use in all of the subject articles.

6. The imported goods are sold in boxes displaying them with various features highlighted. Among these features are: padded handles, zipper closures, inside security zip pockets, multi-pocket organizers, expandable file compartments, pen loops and the 3 ring binder mechanisms.

*STANDARD AND SCOPE OF REVIEW*

■ Pursuant to the rules of this Court, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT Rule 56(d); *Lynteq, Inc. v. United States,* 976 F.2d 693 (Fed.Cir. 1992); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387 (Fed.Cir.1987); *Totes, Inc., v. United States,* 18 CIT 919, 922, 865 F.Supp. 867, 870 (1994), *aff'd,* 69 F.3d 495 (Fed.Cir.1995). The court agrees with the parties in that there are no material factual issues that are genuinely in dispute, and that the issues of law raised may be resolved by summary judgment. In making the determination as to where plaintiff's product is properly classified under the HTSUS, the Court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark, Co. v. United States,* 733 F.2d 873, 878 (Fed.Cir.1984).

*DISCUSSION*

**I.**

■ Pursuant to GRI 1, "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes ***." *Orlando Food Corp. v. United States,* 140 F.3d 1437, 1439 (Fed.Cir.1998). Additionally, classification of an article is a two step process requiring the court to "(1) ascertain[ ] the proper meaning of specific terms in the tariff provision; and (2) determine[ ] whether the merchandise at issue comes within the description of such terms as properly construed." *Sports Graphics, Inc. v. United States,* 24 F.3d 1390, 1391 (Fed.Cir.1994). In the absence of a statutory definition or contrary legislative intent, tariff terms are "construed in accordance with their common and popular meaning," *E.M. Chemicals v. United States,* 920 F.2d 910, 913 (Fed.Cir.1990); courts may rely upon their own understanding of terms used as well as meanings informed by consultation of dictionaries, scientific authorities and other reliable sources of information. *Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 789 (Fed.Cir. 1988).

■ Initially, the government argues that the merchandise is classifiable in Heading 4202 under the doctrine of *ejusdem generis* . In the classification context, *ejusdem generis* is simply a rule of statutory construction, meaning literally "of the same kind," which groups articles of the same class or kind with exemplars for which they share "the same essential characteristics or purposes that unite the articles enumerated *eo nomine* " in a tariff provision. *Sports Graphics,* 24 F.3d at 1392. Put differently, "the rule of *ejusdem generis* requires only that the merchandise possess the essential character or purpose running through all of the enumerated exemplars" of a provision. *Totes,* 18 CIT at 925, 865 F.Supp. at 872. The court concludes that defendant's contention that the merchandise is classifiable under subheading 4202.11.00 as "similar containers" under the principle of *ejusdem generis* is correct.

First, Subheading 4202.11.00 includes "attache cases, briefcases, school satchels and similar containers: with outer surface of leather, of composition leather, or of patent leather." While the common understanding of briefcases, attache cases and satchels is not terribly elusive, the court nonetheless notes that the term "briefcase" is defined as "a small case made of leather, etc., for carrying papers, documents, and the like." *The Oxford English Dictionary* (2d ed.1989).[1] Further, the court may take judicial notice that briefcases are commonly used to carry such articles as newspapers, books, notepads, small umbrellas, etc.

In addition, as this writer has previously held, the exemplars under Heading 4202 are united by their function of organizing, storing, holding and protecting other articles. *Totes,* 18 CIT at 924, 865 F.Supp. at 872.

---

1. *See also Webster's Third New International Dictionary Unabridged* (1968) (defining a briefcase as "a flat flexible usu[ally] leather case with a handle that is designed to carry legal briefs or other papers").

The exemplars covered by subheading 4202.11.00 are merely narrowed to cover "[t]runks, suitcases, vanity cases, attache cases, briefcases, school satchels and similar containers: [w]ith outer surface of leather, of composition leather, or of patent leather." The imported articles all function to carry, protect, organize and hold papers, documents and other personal items. One-half of the exemplar containers listed under subheading 4202.11.00 are specifically used for carrying papers and documents, i.e., briefcases, attache cases and school satchels, a use for which the imported items are obviously well-suited.

Indeed, the cases before the court are very similar in appearance and use to briefcases: all four items have the appearance of a flat, flexible case made of leather and are capable of carrying papers or documents in addition to items such as pens, computer disks, etc. All of the articles can be closed with a zipper, carried by padded leather handles, and have several pockets, both on the inside and the outside of the case, which can hold documents or papers that measure 8½ by 11 inches. In addition, the largest inside pockets are expandable, thereby permitting sizable documents to be stored in an interior part of the case that is separate from the binder assembly. Further, the boxes in which these cases are marketed at retail advertise the "multi-pocket organizer" and large "interior zippered security pocket" features. (Defendant's Exhibits F and J). While the cases are sold with a binder assembly and a memo pad inside, the many other significant attributes mentioned on the retail package certainly make it appear to be similar in use to a briefcase. In addition, the court may take judicial notice of the fact that persons using briefcases commonly carry a memo pad inside. Likewise, the three ring binder assembly is obviously intended to hold and carry within the case sheets of paper which may be used for any purpose. Whether or not the binder mechanism is used to hold loose sheets or a pad of paper, the binder assembly in no way prevents or impedes other papers or articles from being carried in space remaining in the main part of the case without being fastened in the binder.[2]

Furthermore, plaintiffs attempt to dismiss as irrelevant the size and other features of the imports that are similar to those possessed by attache cases and briefcases, arguing that the subject merchandise is nothing more than large size organizers or planners, must be rejected in an *ejusdem generis* analysis. Obviously, if the disputed articles were of a size that would fit in a shirt or jacket pocket, then they would no longer be similar to briefcases, attache cases and school satchels. In this regard, the size of the containers makes them similar to the attache cases, briefcases and school satchel exemplars in subheading 4202.11.00 and does affect the character of the merchandise.

In sum, given the articles' similarity to the briefcase and attache cases exemplars in subheading 4202.11.00, Customs' classification was correct.

■ Nevertheless, plaintiff also vigorously opposes the classification of the imports pursuant to the rule of *ejusdem generis* by contending that although the cases may be used to carry papers and other personal items and have other features similar to those of briefcases and attache cases, plaintiff intended that the merchandise be used as planners. In instances where an article has a primary purpose that is different from that of all the exemplars under a heading, the application of *ejusdem generis* to such article is precluded. *Totes,* 69 F.3d at 498, citing *Sports Graphics,* 24 F.3d at 1393. This principle was clarified by the Federal Circuit's decision in *SGI, Inc. v. United States,* 122 F.3d 1468, 1472 (Fed.Cir.1997).

In *SGI,* plaintiff had imported soft-sided, insulated coolers made of vinyl used for carrying food or beverages while keeping them cold. *Id.* at 1469. While the Federal Circuit did not disagree with the trial court's finding that the coolers had the attributes of organizing, storing, protecting and holding other articles, like the exemplars under subheading 4202.92.90, the appellate court re-classified the goods as "other household articles" made of plastic under the subheading for tableware

---

**2.** In fact, all of the briefs and papers submitted for this motion fit in any one of the cases.

and kitchenware because the coolers carried food or beverages, like the exemplars under subheading 3924.10. Because none of the exemplars under the 4202.92.90 subheading were used to carry or store food, the Federal Circuit reasoned that classification under that provision by *ejusdem generis* was precluded. *Id.* at 1472. The court finds that *SGI* does not require classification outside of Heading 4202 in the present case.

Unlike the insulated coolers in *SGI*, which possessed a primary purpose (food preservation and storage), which differed from all of the exemplars in Heading 4202, the current merchandise is designed to hold, carry, protect, and organize the very same items as are commonly found in briefcases, attache cases and school satchels. While plaintiff argues that the cases can be used and carried in a number of ways, the purpose of the imported goods matches that of the above-cited exemplars.

## II.

■ Turning now to plaintiffs claim that the articles should have been classified as "diaries" or similar thereto under subheading 4820.10.20. The court rejects the contention that since the imports are capable of receiving daily entries or notations of transactions or events, they are like "diaries" as defined in *Brooks Bros., A Div. Of Julius Garfinckel & Co. v. United States*, 68 Cust.Ct. 91, C.D. 4342 (1972), wherein the court quoted the following from *Fred Baumgarten v. United States*, 49 Cust.Ct. 275, Abs. 67150 (1962):

[T]he particular distinguishing feature of a diary is its suitability for the receipt of daily notations; and, in this respect, the books here in issue are well described. *By virtue of the allocation of spaces for hourly entries during the course of each day of the year, the books are designed for that very purpose.* That the daily events to be chronicled may also include scheduled appointments would not detract from their general character as appropriate volumes for the recording of daily memoranda.

68 Cust.Ct. at 96 (emphasis added).

The foregoing quotation is not descriptive of any of the predominant features of the subject cases, or even in part descriptive with respect to the blank pads of paper with a calendar inserted therein. Significantly, unlike the diary format defined and described in *Brooks Bros.* and *Baumgarten*, the subject cases present no insert with preprinted allocation of spaces for daily or hourly entries, or any designation whatever that hints that data or transactions may be recorded with reference to the date or time of day or at regular daily intervals of time. Indeed, even the calendar printed on the inside cover of the memo pad provides no space or other format for recording daily events. In view of the fact that the instant articles are not preprinted formats for daily or other recording of activities or transactions, they are not diaries or similar to diaries within the common understanding of that term.

Finally, even if the paper pads, standing alone, had an organizational format characteristic of diaries (or of "organizers" or "planners," as also contended by plaintiff), the court must consider the classification of imported articles as a whole and cannot overlook the additional features that are characteristic of briefcases, attache cases and school satchels, *i.e.*, the padded handles, the zipper closure, exterior and interior pockets,[3] and expandable folio compartments for carrying papers and other articles. In the condition in which the cases are imported, the court views it extremely unlikely that any retailer would market or represent to a consumer that the imports as a whole are "diaries," "organizers," or "planners." Indeed, unlike the "Economist Diary" in *Brooks Bros.*, neither the retail boxes nor tags for marketing the subject cases refer to them as diaries, organizers, or planners. The short of the matter is that both *Brooks Bros.* and *Baumgarten*, which did involve diaries, are distinguishable from the facts of this case.

---

**3.** As previously mentioned, some of the internal pockets of the cases are designated on the retail boxes as a "multi-pocket organizer." However, that feature is merely one of ten features highlighted on the retail box.

726

Indeed, even assuming *arguendo* that the memo pad with a calendar contained within the imported cases could themselves be characterized as similar to diaries, it a fundamental rule of customs classification that when goods constitute more than a particular article because they possess additional significant features or perform additional nonsubordinate functions; they are not classifiable as that article. *Digital Equipment Corp. v. United States,* 889 F.2d 267, 268 (Fed.Cir.1989). On this point, the samples submitted to the court are "potent witnesses." *See Marshall Field & Co. v. United States,* 45 C.C.P.A. 72, 81, C.A.D. 676 (1958). Obviously, this merchandise is designed for and is capable of doing far more than simply receiving daily notations or assisting the user in planning daily activities. Rather, these cases are extremely well-suited for organizing, storing, protecting and carrying papers, documents and many other items that would fit in a briefcase. Quite simply, these articles are more than the articles described by plaintiffs claims.

### III.

In any event, even if the imported articles were described in Chapter 48, the merchandise would be excluded from that chapter. General Rule of Interpretation 1 of the HTSUS dictates that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes." Thus, "the HTSUS headings, as well as the relative section or chapter notes, govern the classification of a product." *Orlando Food,* 140 F.3d 1437, 1439. Under the express language of GRI 1, goods are to be classified in accord with the subsequent GRIs provided that the headings or section or chapter notes "do not otherwise require." The notes of Chapter 48 contain such a contrary requirement which not only precludes the use of further GRIs for classification in this instance by excluding these goods from classification under Chapter 48 once they have been determined to be classifiable under Heading 4202.

Note 1(g) for Chapter 48 states that the chapter does not cover "[a]rticles of Heading 4202 (for example, travel goods)." Therefore, items that can be classified under Heading 4202 are specifically excluded from classification under all of Chapter 48. Plaintiff has called nothing to the attention of the court that would require ignoring the clear exclusionary language in Note 1(g). Thus, the exclusionary note applies and precludes classification within Chapter 48 without the necessity of resorting to further GRIs. As such, it is unnecessary to consider the parties contentions regarding the proper interpretation of GRI 3.

### CONCLUSION

For the foregoing reasons, the court finds that plaintiff's products were classified correctly and grants defendant's motion for summary judgment and dismissal. Accordingly, plaintiff's motion for summary judgment is denied.

Judgment will be entered for the defendant.

IT IS SO ORDERED.

### JUDGMENT

Upon reading plaintiff's motion for summary judgment, defendant's cross-motion for summary judgment, plaintiff's and defendant's replies, and upon consideration of all other papers and proceedings had herein, it is hereby:

**ORDERED** that plaintiff's motion for summary judgment be, and hereby is, denied; it is further

**ORDERED** that defendant's cross-motion for summary judgment be, and hereby is, granted; and it is further

**ORDERED** that this action be, and hereby is, dismissed.