**AVENUES IN LEATHER, INC.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 98–1511.

United States Court of Appeals, Federal Circuit.

May 20, 1999.

James Caffentzis, Fitch, King and Caffentzis, of New York, New York, argued for plaintiff-appellant.

Amy M. Rubin, Attorney, Civil Division, Commercial Litigation Branch, International Trade Field Office, U.S. Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were David M. Cohen, Director, Commercial Litigation Branch, U.S. Department of Justice, of Washington, DC, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office.

Before CLEVENGER, Circuit Judge, SKELTON, Senior Circuit Judge, and GAJARSA, Circuit Judge.

CLEVENGER, Circuit Judge.

Avenues in Leather, Inc., appeals the Court of International Trade's decision upholding the tariff classification and rate of duty imposed by the United States Customs Service on large leather cases or "folios" upon their importation into the United States. *See Avenues in Leather, Inc. v. United States*, 11 F.Supp.2d 719 (Ct. Int'l Trade 1998). Because we agree with the Court of International Trade that the goods were properly classified, we affirm.

I

The imported goods at issue are four types of leather "folios," which the parties agree are so similar as to require identical classification. Broadly speaking, the folios are used to store, organize, and carry papers, books, pens, pencils, and the like. They can be opened and closed; each of the folios measures at least 13 inches tall by 10 inches wide when closed. Contents can be secured by the use of a three-sided zipper and gusset or by the several pockets located both inside and outside the folios. A three-ring binder is attached to the interior spine of each folio, and a lined notepad is provided. The outside of the folios are covered with leather, contain large pockets, and have handles either built into the spine or recessed into the pockets.

Upon their importation, the United States Customs Service ("Customs") classified the folios under Harmonized Tariff Schedule of the United States ("HTSUS")

subheading 4202.11.00 ("Heading 4202"), which covers:

> 4202 Trunks, suitcases, vanity cases, attaché cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, toiletry bags, knapsacks and back packs, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composite leather, of sheeting of plastics, of textile materials, of vulcanized fiber, or of paperboard, or wholly or mainly covered with such materials or with paper:
>
> Trunks, suitcases vanity cases, attaché cases, briefcases, school satchels and similar containers:
>
> 4202.11.00 With outer surface of leather, of composition leather, or of patent leather.

Avenues in Leather, Inc. ("Avenues") argued, however, that the folios should instead be classified under HTSUS subheading 4820.10.20 ("Heading 4820"), which provides:

> 4820 Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles, exercise books, blotting pads, binders (loose-leaf or other), folders, file covers, manifold business forms, interleaved carbon sets and other articles of stationery, of paper or paperboard; albums for samples or for collections and book covers (including cover boards and book jackets) of paper or paperboard:
>
> 4820.10 Registers, account books, notebooks, order books, receipt books, letter pads and similar articles:

4820.10.20 Diaries, notebooks and address books, bound; memorandum pads, letter pads and similar articles

The real-world difference between these two classifications is significant: items classified under Heading 4202.11.00 are dutiable at eight percent *ad valorem*, while items under 4820.10.20 are dutiable at four percent.

■ Avenues took its dispute with Customs to the Court of International Trade, filing suit in 1994. On cross-motions for summary judgment, that court noted that the parties agreed that no material facts were in dispute. *See Avenues in Leather*, 11 F.Supp.2d at 723. The Court of International Trade concluded that, under the rule of *ejusdem generis*[1]—calling for the classification of imported articles with exemplars with which they share the same essential characteristics or purposes that unite the listed exemplars—Customs' decision to enter the goods under Heading 4202 was correct. *See id.* at 724. The Court of International Trade held that the primary purpose of the imported folios is consistent with the primary purpose of the listed exemplars in Heading 4202, and that there is a strong physical similarity between the folios and the 4202 exemplars. *See id.* at 724–25. The Court of International Trade granted Customs' motion for summary judgment, dismissing the action.

This appeal followed, vesting us with jurisdiction under 28 U.S.C. § 1295(a)(5) (1994).

## II

■ We review the trial court's grant of summary judgment for correctness as a matter of law. *See Sharp Microelectronics Tech., Inc. v. United States*, 122 F.3d 1446, 1449 (Fed.Cir.1997); *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed.Cir.1994). As in this case, where there are no disputed material facts regarding the imported merchandise, our

---

1. "Of the same kind, class or nature." Black's Law Dictionary (6th ed.1990).

analysis of whether the merchandise has been properly classified reduces to a determination of the proper meaning and scope of the terms used in the tariff provision. *See SGI, Inc. v. United States*, 122 F.3d 1468, 1471 (Fed.Cir.1997); *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed.Cir.1994).

■ The law of this court has been that the interpretation of tariff provisions are an issue of law which we review *de novo*. *See Sharp Microelectronics*, 122 F.3d at 1449; *Sports Graphics*, 24 F.3d at 1391. In *United States v. Haggar Apparel Co.*, — U.S. —, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999), the Supreme Court held that Customs' interpretation of the HTSUS, as evinced in issued regulations, is entitled to deference under the rubric of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Although this case is distinct from *Haggar* in that no Customs regulations are at issue, we recognize that the Supreme Court's pronouncement may nonetheless raise questions regarding the proper standard of review of Customs' interpretation of the HTSUS. Because neither party has raised this issue, and because—as described below—we accept Customs' interpretative position even under a more searching de novo review, we leave the standard of review question for another day.

The issue before us is whether the properly-interpreted scope of HTSUS Heading 4202 or HTSUS Heading 4820 encompasses Avenues' imported folios. Avenues argues first that classification in Heading 4202 is improper, and second that classification in Heading 4820 is proper regardless of whether classification in Heading 4202 is possible. There is no dispute that the folios are not specifically listed as an exemplar in either Heading 4202 or 4820. However, each Heading contains a general phrase following the listed exemplars, making clear that the Headings are to cover "similar containers" in the case of Heading 4202, and "similar articles" in the case of Heading 4820. This court has held that when a list of items is followed by a general word or phrase, the rule of *ejusdem generis* is used to determine the scope of the general word or phrase. *See Totes, Inc. v. United States*, 69 F.3d 495, 498 (Fed.Cir.1995). In classification cases, *ejusdem generis* requires that, for any imported merchandise to fall within the scope of the general term or phrase, the merchandise must possess the same essential characteristics or purposes that unite the listed examples preceding the general term or phrase. *See id.; Sports Graphics*, 24 F.3d at 1392. This court has further clarified the *ejusdem generis* principle to make clear that a classification is inappropriate when an imported article has a specific and primary purpose that is inconsistent with that of the listed exemplars in a particular heading. *See, e.g., SGI*, 122 F.3d at 1472; *Sports Graphics*, 24 F.3d at 1393. Thus, under an *ejusdem generis* analysis, a court must consider the common characteristics or unifying purpose of the listed exemplars in a heading as well as consider the specific primary purpose of the imported merchandise. Classification of imported merchandise under *ejusdem generis* is appropriate only if the imported merchandise shares the characteristics or purpose and does not have a more specific primary purpose that is inconsistent with the listed exemplars. *See SGI*, 122 F.3d at 1472 (classification under *ejusdem generis* inappropriate when "none of the exemplars involves [the primary purpose of the imported goods]"); *Sports Graphics*, 24 F.3d at 1392–93 (because the specific primary purpose was distinct from the essential characteristics of the listed exemplars, *ejusdem generis* classification is improper).

A

■ Avenues acknowledges that the essential characteristics of the listed exemplars in Heading 4202 are those of "organizing, storing, protecting, and carrying various items," *Totes*, 69 F.3d at 498, and that the imported folios do exhibit these

characteristics. However, Avenues describes the specific primary purpose of the imported folios as "an organizational aid," suggesting that Heading 4202 is an inappropriate classification heading. We disagree. It is, of course, unquestionable that the imported folios exhibit a number of characteristics and accomplish a range of purposes—indeed, their very versatility is an attractive feature. Prominent among these purposes are those exemplified in the listed items in Heading 4202: organizing, storing, protecting, and carrying various items. *See id.* The Court of International Trade noted that the folios' large size, numerous and sizable pockets, and external handles speak strongly of the "organizing, storing, protecting, and carrying" characteristics of the imported merchandise—a conclusion with which we readily concur. Avenues argues that this view focuses too closely on handles and size, and not enough on the internal features of the folios—namely, the three-ring binder and the notepad, the cover of which contains a pre-printed yearly calendar. We are unpersuaded, however. The Court of International Trade was correct in determining that the "organizational aid" purpose that Avenues asserts, as well as the physical characteristics of the internal binder and notepad, are not inconsistent with the essential characteristics of the listed exemplars in Heading 4202. Additional, but not inconsistent, characteristics or purposes do not defeat classification under *ejusdem generis*. *See Totes,* 69 F.3d at 498. In the *ejusdem generis* context, once a correspondence between the essential characteristics or purposes of the listed exemplars of a heading and the imported merchandise is established, only an inconsistent specific primary purpose will prevent classification under that heading. *See SGI,* 122 F.3d at 1472 (imported goods were not ejusdem generis with listed items when "none of the exemplars ... involve[ed] [the specific primary purpose of the imported goods]"); *Totes,* 69 F.3d at 498–99 (merchandise in *Sports Graphics* was not *ejusdem generis* with listed exem-

plars because the imports had a "different purpose" and "the specific use [of the imported merchandise] was predominant over the more general description [of the listed exemplars]"). Here, even if the binder and notepad/calendar features were sufficient to lend a sort of "organizational aid" or "time management" purpose to the folios, we do not discern (nor did the Court of International Trade) how this purpose is inconsistent with those of the listed items in Heading 4202. In short, Avenues has not been able to articulate why these folios—versatile cases that "organize, store, protect, and carry various items"—cannot be classified, as *ejusdem generis*, with the "attaché cases, briefcases, school satchels and similar containers" of HTSUS Heading 4202.11.00.

### B

■ We are similarly unpersuaded by Avenues' argument that the imported folios can also be classified under Heading 4820. Avenues notes, correctly, that if the imported goods are *prima facie* classifiable under two or more headings, General Rule of Interpretation ("GRI") 3(a) of the HTSUS requires that the item be classified under the more specific provision, or, failing that, under the heading which occurs last in numerical order, according to GRI 3(c). Thus, Avenues suggests that Heading 4820, being both more specific and later in numerical order, is the appropriate provision.

■ We reject Avenues contention that the imported folios are *ejusdem generis* with the listed exemplars in Heading 4820. That Heading lists items such as "diaries, notebooks and address books, bound; memorandum pads, letter pads and similar articles." There is little dispute that, in some configuration of the contents of these folios, they could perform many or all of the functions of diaries, notebooks, or address books. But that, in and of itself, does not make out a *prima facie* case of proper classification. We have held that

when imported merchandise contains additional "nonsubordinate or coequal" characteristics or purposes than a specific article listed as an exemplar, the merchandise is not classifiable as that article. *See, e.g., Digital Equipment Corp. v. United States,* 889 F.2d 267, 268 (Fed.Cir.1989). It follows, then, that the possibility that the imported folios here could be used as diaries does not necessarily make them *ejusdem generis* with diaries. Instead, the analysis must consider the imported merchandise as a whole. In doing so, we cannot look beyond the prominence of the organizing, carrying, and storing features noted above (and by the Court of International Trade). These folios are plainly far more than simply diaries or address books, and thus cannot properly be classified in Heading 4820.

### C

 Avenues finally argues that the Court of International Trade erred in stating that Note 1(g)—now Note 1(h)—to HTSUS Chapter 48 provides additional support for classifying the folios in Heading 4202. Specifically, Avenues argues that the Court of International Trade used Note 1(g), which states that Chapter 48 does not cover "[a]rticles of Heading 4202 (for example, travel goods)," as a "tie-breaker", in violation of the command of *Sharp Microelectronics Tech., Inc. v. United States,* 122 F.3d 1446 (Fed.Cir.1997). We disagree. In *Sharp,* we noted that provisions such as Note 1(g) are simply interpretive tools that "complement[ ] the rule of relative specificity" rather than obviate substantive analysis. *Id.* at 1450. Here, the Court of International Trade had already determined that the folios were not properly classified under Heading 4820. *See Avenues in Leather,* 11 F.Supp.2d at 726 ("[E]ven if the imported articles were described in Chapter 48, the merchandise would be excluded from that chapter [by the operation of Note 1(g) ]."). No "tie-breaking" was accomplished—or needed. Thus, we do not view the Court

of International Trade's citation to Note 1(g) as contrary to *Sharp,* as it did not substitute that citation for meaningful analysis.

### III

Avenues' imported folios were properly classified under HTSUS Heading 4202.11.00, and cannot properly be classified under Heading 4820.10.20. Accordingly, we affirm the decision of the Court of International Trade.

### COSTS

No costs.

*AFFIRMED.*