# United States Court of Appeals for the Federal Circuit

04-1443

AVENUES IN LEATHER, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

James Caffentzis, Fitch, King and Caffentzis, of New York, New York, argued for plaintiff-appellee. With him on the brief was Peter J. Fitch.

Amy M. Rubin, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Barbara S. Williams, Attorney in Charge, International Trade Field Office, of New York, New York. Of counsel on the brief was Karen P. Binder, Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Senior Judge R. Kenton Musgrave

# United States Court of Appeals for the Federal Circuit

04-1443

AVENUES IN LEATHER, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED: September 15, 2005

_____

Before MICHEL, Chief Judge, RADER and LINN, Circuit Judges.

LINN, Circuit Judge.

The United States appeals a decision of the Court of International Trade classifying certain folio merchandise imported by Avenues in Leather, Inc. ("Avenues") under subheading 4820.10.2020 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Aves. in Leather v. United States, No. 99-09-00603 (Ct. Int'l Trade Apr. 26, 2004) ("CIT Opinion"). Because we conclude that the Court of International Trade correctly classified the imported goods, we affirm.

BACKGROUND

The merchandise at issue are Presentation Calcu-Folios imported by Avenues in 1997. These Calcu-Folios measure approximately 13.5 inches tall by 11.5 inches wide by 1.5 inches deep when closed, are zippered on three sides with an interior sleeve, possess one exterior open flat pocket and a number of small interior pockets, have a padded carrying handle fitted to the exterior spine, are constructed of paperboard covered with plastic foam and a vinyl/plastic exterior and interior, contain a solar-powered calculator, and have an interior three-ring metal binder permanently affixed to the spine.

Upon importation, the Bureau of Customs and Border Protection and its predecessor United States Customs Service ("Customs") classified the merchandise under HTSUS subheading 4202.12.20,[1] which covers "Trunks, suitcases, vanity cases, attaché cases, briefcases, school satchels, and similar containers. . . [w]ith outer surface of plastics." Avenues argued, however, that the Presentation Calcu-Folios should be classified under either HTSUS subheading 4820.30.00,[2] which covers

_____

[1]    Heading 4202 covers:

Trunks, suitcases, vanity cases, attaché cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, toiletry bags, knapsacks and back packs, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases, similar containers, of leather or of composite leather, of sheeting of plastics, of textile materials, of vulcanized fiber, or of paperboard, or wholly or mainly covered with such materials or with paper. . . .

"[b]inders (other than book covers), folders and file covers" or HTSUS subheading 4820.10.2020, which covers "[m]emorandum pads, letter pads and similar articles."

The difference between these two classifications is significant: items classified under subheading 4202.12.20 are dutiable at 20% ad valorem, while items under subheadings 4820.30.00 and 4820.10.2020 are dutiable at 3.7% and 2.8%, respectively.

This is not the first time the parties have disputed the proper tariff classification of this type of merchandise. A brief description of the procedural history of this case is warranted to provide the context for the Court of International Trade's decision, which is the subject of this appeal.

In 1993, upon importation of four other types of leather folios similar to the merchandise at issue in this case, Customs classified the leather folios under HTSUS subheading 4202.11.00. Aves. in Leather v. United States, 11 F. Supp. 2d 719, 721 (Ct. Int'l Trade 1998). Avenues protested Customs' classification and filed suit in the Court of International Trade, arguing that the folios should be classified under subheading 4820.10.20. Id. The Court of International Trade granted summary judgment upholding Customs' classification. Id. at 726. Avenues appealed to this court,

---

[2] Heading 4820 covers:

Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles, exercise books, blotting pads, binders (looseleaf or other), folders, file covers, manifold business forms, interleaved carbon sets and other articles of stationery, of paper or paperboard; albums for samples or for collections and book covers (including cover boards and book jackets) of paper or paperboard….

and we affirmed the judgment of the Court of International Trade.  <u>Aves. in Leather, Inc.</u> <u>v. United States</u>, 178 F.3d 1241, 1246 (Fed. Cir. 1999) ("<u>Avenues I</u>").

In 1997, Customs classified the Calcu-Folio goods, which are the subject of this appeal, under subheading 4202.12.20.  Avenues disagreed with Customs' classification and filed a complaint in the Court of International Trade, contending that the merchandise is properly classifiable under subheading 4820.30.00.  The Court of International Trade granted summary judgment affirming the classification based on the reasoning that, to avoid summary judgment, Avenues had to prove that our decision in <u>Avenues I</u> was "clearly erroneous."  <u>Id.</u>  We reversed the grant of summary judgment and remanded the case because this was a new entry and a court had not previously classified the Calcu-Folios.  <u>Aves. in Leather v. United States</u>, 317 F.3d 1399, 1405 (Fed. Cir. 2003) ("<u>Avenues II</u>").

On remand, a trial was held on October 1, 2003 at the Court of International Trade.  To prove that the Calcu-Folios should be classified under HTSUS heading 4820, Avenues presented testimony of Otniel Shor, Caron Ann Williamson, and Sam Goldstein.  Customs responded by presenting the testimony of Customs National Import Specialists Carl Abramowitz and Kevin Gorman to support its contention that the merchandise should be classified under heading 4202.  The Court of International Trade rejected Customs' classification of the Presentation Calcu-Folios under subheading 4202.12.20, and held that they were classified properly under subheading 4820.10.2020 as "memorandum pads."  <u>CIT Opinion</u>.

At the trial, Avenues' witness, Shor, the designer of Calcu-Folio, testified that the article was designed as an organizational aid for taking notes by allowing the user to

organize and interact with the matter bound by the pad folio. He further testified that the inside sleeve was designed to hold a standard office folder, and the folio had a maximum inside capacity of 1 inch. Thus, Avenues contended, the folios at issue were akin to "portfolios," or flat cases designed and intended to hold papers.

Customs submitted several dictionary definitions of "briefcase" to argue that the merchandise was prima facie classifiable in heading 4202 as either a form of "briefcase" or as a "similar container" under an ejusdem generis analysis. Emphasizing the "container" aspects of the merchandise, Customs introduced evidence on the marketing of the goods as business travel goods. Customs further argued that the folios were capable of being used to carry non-paper personal and business objects.

In reaching its conclusion, the Court of International Trade recognized that the essential characteristics of the listed exemplars in heading 4202 are to "organize, store, protect, and carry various items." Based on the testimony of the witnesses and the evidence presented, it concluded that the Calcu-Folios had a different specific primary purpose—to facilitate the taking of notes as well as aid the organization of print and other visual flat materials capable of being bound by the article's metal binder or fit within its pockets. Relying on General Rules of Interpretation ("GRI") 3(b), the Court of International Trade concluded that the article had the essential character of a binder or a memorandum pad under heading 4820, and such features complemented the article's predominant purpose as an article of stationery, of paper or paperboard. Thus, the Court of International Trade classified the folios as memorandum pads, under Subheading 4820.10.2020.

The United States timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

### A. Standard of Review

Whether an imported item has been properly classified involves a two step analysis: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1391 (Fed. Cir. 1994). Determining the proper meaning of terms is a question of law that we review de novo, while determining whether the item fits within such meaning is a question of fact that we review for clear error. Id.

On appeal, "the appellant bears the burden of establishing reversible error in the decision of the Court of International Trade, by showing that the court erred in its interpretation of the law, or that its findings of fact are clearly erroneous with due consideration to the appropriate level of deference." Park B. Smith, Ltd. v. United States, 347 F.3d 922, 925 (Fed. Cir. 2003).

### B. Analysis

### I. Stare Decisis

Customs first argues that the Court of International Trade's decision violates the doctrine of stare decisis because it failed to disinguish this court's ruling in Avenues I. Specifically, Customs contends that because the Calcu-Folios are substantially the same as the articles at issue in Avenues I, the Court of International Trade should have been bound by the decision in that case, which classified the articles under section

4202 and rejected Avenues' attempt to classify them under section 4820. Customs further contends that the Court of International Trade erred by not providing any basis for distinguishing this case from Avenues I.

Avenues responds that the similarity of the articles does not preclude it from retrying the classification under the rule of law pronounced in United States v. Stone & Downer Co., 274 U.S. 225 (1927). Avenues contends that it was allowed to present new or additional evidence to the trial court and have the second case considered on its own merits. Avenues finally responds that, contrary to the government's assertions, the public will not be left without any guidance due to the apparent conflict between this decision and Avenues I because the remaining cases will be resolved on a case by case basis either at the administrative or the judicial level.

It is well settled that collateral estoppel does not prevent an importer from successive litigation over the classification of merchandise, even when the subsequent importations involve the "same issue of fact and the same question of law." Stone & Downer Co., 274 U.S. at 234. However, as we explained in Avenues II, "[a]lthough an importer is free to challenge anew a previous classification of merchandise under the rule of Stone & Downer, we have decided that the importer is burdened by the doctrine of stare decisis." Avenues II, 317 F.3d at 1403.

Stare decisis in essence "makes each judgment a statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decision…. It deals only with law, as the facts of each case must be determined by the evidence adduced at trial. . . ." Mendenhall v. Cedar Rapids, Inc., 5

F.3d 1557, 1570 (Fed. Cir. 1993) (quoting 18 James W. Moore, Moore's Federal Practice, ¶ G401 (2d ed. 1993)).

Because the doctrine of stare decisis applies to only legal issues and not issues of fact, Avenues is burdened by the previous legal determination that "the common characteristic or unifying purpose of the goods in heading 4202 consist[s] of 'organizing, storing, protecting, and carrying various items.'" Avenues II, 317 F.3d at 1402. More importantly, because the determination of whether the merchandise at issue comes within the description of a tariff provision is an issue of fact, Park B. Smith, Ltd., 347 F.3d at 926, the classification of goods in Avenues I is not stare decisis to the classification of the Calcu-Folios in this case. Thus, the Court of International Trade did not violate the doctrine of stare decisis in classifying the merchandise under Heading 4820.

## II.    HTSUS Classification

The parties' remaining arguments are directed to the issue of whether the properly-interpreted scope of HTSUS Heading 4202 or HTSUS Heading 4820 encompasses Avenues' imported folios. We address classification under each of these headings seperately.

### a.  Heading 4202

Regarding classification under Heading 4202, Customs argues that because the articles at issue satisfy the common definition of one of the eo nomine exemplars, "briefcases," the Court of International Trade erred in concluding that the Calcu-Folios are not classified under section 4202. Customs further argues that, under a ejusdem

generis analysis, the articles in question are classifiable under Heading 4202 because they possess the characteristics uniting all of the containers of that heading.

Avenues responds that the Court of International Trade correctly concluded that the Calcu-Folios are not a form of a "briefcase," and properly rejected an ejusdem generis classification under Heading 4202 in view of its finding that the specific primary purpose of the Calcu-Folios is to facilitate taking of notes as well as to aid the organization of print and other visual flat materials.

While the Court of International Trade did not specifically state that the folios in question were not a form of briefcase, the court described the goods in question as "pad folios," and, as such, concluded that "they lack[ed] specific eo nomine classification in the HTSUS." CIT Opinion at 2. Thus, the court implicitly rejected their classification as a form of a briefcase. Based on its observation that the folio pockets were essentially flat, the court found "the article suitable only for holding loose papers, files and other flat items such as business cards, floppy discs, et cetera." Id. at 16. The court also acknowledged the testimony of Avenues' witness, Shor, stating that

> [Shor] explained that "pad folios" are not briefcases, which are designed to carry various business-related as well as personal articles…, nor are they attache cases, which are hard-sided rectangular cases…. He described them as "covers" and "carriers" designed to hold and organize paper products and flats such as cards, envelopes, photographs, file folders, thin catalogues, et cetera, capable of being fit within the pad folio's pockets and sleeves.

Id. at 4.

The trial court also found that while the article could be used to carry personal objects that would normally be carried in a briefcase, the article was not designed to do so. See id. at 17. The trial court made these factual findings based on the testimony of the witnesses and other evidence presented to the court. We do not discern clear error

in either the trial court's findings, or its conclusion based on those findings that the Calcu-Folios are not, eo nomine, a form of briefcase.

Heading 4202 contains a list of particular items followed by a general phrase, "similar articles." It is well settled that when a list of items is followed by a general word or phrase, the rule of ejusdem generis is used to determine the scope of the general word or phrase. See Totes, Inc. v. United States, 69 F.3d 495, 498 (Fed. Cir. 1995). In classification cases, ejusdem generis requires that, for any imported merchandise to fall within the scope of the general term or phrase, the merchandise must possess the same essential characteristics or purposes that unite the listed exemplars preceding the general term or phrase. Sports Graphics, 24 F.3d at 1392. However, a classification under the ejusdem generis principle "is inappropriate when an imported article has a specific and primary purpose that is inconsistent with that of the listed exemplars in a particular heading." Avenues I, 178 F.3d at 1244.

We have previously held that the "the common characteristic or unifying purpose of the goods in heading 4202 consist[s] of 'organizing, storing, protecting, and carrying various items.'" Avenues II, 317 F.3d at 1402. The Court of International Trade found the specific and primary purpose of the Calcu-Folios is to facilitate taking of notes as well as to aid the organization of print and other visual flat materials capable of being bound by the article's metal binder or fit within its pockets. CIT Opinion at 19. Customs does not challenge this finding. It asserts, however, that this specific and primary purpose of the Calcu-Folios cannot preclude ejusdem generis classification of the articles under Heading 4202.

In Avenues I, we concurred with the Court of International Trade's conclusion that the physical characteristics of the leather folios "speak strongly to the 'organizing, storing, protecting, and carrying' characteristics of the imported merchandise." Avenues I, 178 F.3d at 1245. However, the classification of the leather folios in Avenues I was resolved on summary judgment. In contrast, in this case, the trial court reached its conclusions after assessing the credibility of the witnesses. Specifically, finding Shor's testimony credible, the court found that the Calcu-Folios were "not designed to accommodate various personal objects." CIT Opinion at 17. The Court also noted that, in view of the limited storage space of the folio, "the article's interior is not sufficiently large or durable enough to hold books, thick newspapers or other personal items for any extended period without damaging itself (or them)." Id. 17-18. While acknowledging that Customs presented evidence to show that the articles could be used to carry personal items, the court found "the testimony of the product's designer of its intended use" to be more persuasive. Id. at 17. For the foregoing reasons, we see no basis to conclude that the trial court's findings are clearly erroneous, particularly in view of the deference afforded to its factual findings based on credibility of witnesses. See Anderson v. Bessemer City, 470 U.S. 564, 575 (1985) ("When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.").

Based on these factual findings, the Court of International Trade concluded that "[t]he articles '4202' features do not impart the essential characteristics of a '4202'

container." CIT Opinion at 19. We agree. Here, while the Calcu-Folios may be used to organize and protect small and/or flat items in addition to a writing pad, they have an internal capacity of only 1 inch and lack significant carrying space. These characteristics make them unsuitable to carry newspapers, books, and other objects that are normally carried in containers that are common to Heading 4202. Moreover, while the articles in question may be generally described as "containers," their specific use is limited to facilitation in taking of notes as well as aiding in the organization of print and other visual flat materials. Such a specific use, which predominates over the more general description of containers, precludes classification of the Calcu-Folios under Heading 4202. See Totes, 69 F.3d at 498 (stating that the merchandise in Sports Graphics was not ejusdem generis with the listed exemplars because the imports had a "different purpose" and "the specific use [of the imported merchandise] was predominant over the more general description [of the listed exemplars]").

Accordingly, the Court of International Trade correctly concluded that the Calcu-Folios are neither classifiable, eo nomine, as a form of briefcase, nor, under an ejusdem generis analysis, as a "similar container," under Heading 4202.

### b. Heading 4820

Regarding classification of the Calcu-Folios under Subheading 4820.10.2020, Customs contends that the Court of International Trade erred in classifying the merchandise as memorandum pads. Specifically, Customs argues that Note 1(h) of Heading 4820 precludes classification under that heading. Customs further argues that the the imported articles are not "articles of stationery, of paper or paperboard." Finally, Customs argues that the trial court erred in using the "essential character" analysis

04-1443                                              12

under GRI 3(b), and confused the concepts of "primary purpose" and "essential character."

Avenues responds that Note 1(h) is inapplicable because the imported articles have a specific primary purpose that prohibits their classification under Heading 4202. Avenues further responds that, based on the evidence, the court correctly found the Calcu-Folios are articles of stationery pertaining to paper or paperboard.

The proper classification of merchandise is governed by the GRIs. See Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). GRI 1 provides that classification is to be determined according to the terms of the headings and any relevant section or chapter notes. Section and chapter notes "are not optional interpretive rules, but are statutory law, codified at 19 U.S.C. § 1202." Park B. Smith, 347 F.3d at 927. Note 1(h) to Chapter 48 states that the Chapter does not cover "[a]rticles of heading 4202 (for example travel goods)." Thus, if the articles are prima facie classifiable under Heading 4202, then applying Note 1(h), the articles are specifically excluded from classification under Heading 4820. See Midwest of Cannon Falls, Inc. v. United States, 122 F.3d 1423, 1429 (Fed. Cir. 1997). Conversely, if the articles are not prima facie classifiable under Heading 4202, exclusionary Note 1(h) is inapplicable. Because, for the reasons stated above in section II.a, supra, the Calcu-Folios are not prima facie classifiable under Heading 4202, Note 1(h) does not preclude classification under Heading 4820.

Taking into consideration all the physical attributes of the Calcu-Folios and the testimony of the witnesses, the Court of International Trade concluded that they were described properly as an article of stationery, of paper or paperboard. CIT Opinion at

19. The court based its conclusion in part on the presence of the article's structural components, which include a memorandum pad, a three-ring binder, and a paperboard core and spine. The memorandum pad and the core are clearly of paper or paperboard. The court further found that the article's pockets are essentially flat, which limits their storage capabilities to papers and other flat items, and the three-ring binder served to hold three-holed items, such as paper from the memorandum pad. Thus, the court concluded, and we agree, that the Calcu-Folios exhibit characteristics of an article of stationery, of paper or paperboard. Apart from the memorandum pad and the binder, which appear as named exemplars under Heading 4820, most of the remaining features of the Calcu-Folios pertain to use with writing or written documents. For example, the pen sleeves are used to hold pens, and the limited capacity of the cover and the pockets restrict use of the Calcu-Folios to holding or organizing flat items such as papers or folders.

Moreover, the Explanatory Notes ("ENs") to Heading 4820 state in relevant part that the heading includes: "(1) … memorandum pad. . . (3) Binders designed for holding loose sheets, magazines, or the like (e.g., clip binders, spring binders, screw binders, ring binders) and folders, file covers, files. . . and portfolios." The ENs further provide that these goods may be bound with materials other than paper, such as leather, plastics, or textile materials, and may have reinforcements or fittings of metals. Although the ENs are not legally binding or dispositive, they may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions. JVC Co. of Am. v. United States, 234 F.3d 1348, 1352 (Fed. Cir. 2000). The examples listed in the EN support the trial court's conclusion that the Calcu-Folio,

04-1443                                    14

which contains a memorandum pad, a ring binder designed to hold loose papers, and a cover to protect its contents, falls under Heading 4820.

Thus, the imported item as a whole exhibits characteristics of an article of stationery, of paper or paperboard, and shares the common characteristics of a memorandum pad and a letter pad. Accordingly, applying GRI 1, we hold that the Calcu-Folios are classifiable under Subheading 4820.10.2020.

Because we conclude that the merchandise at issue is properly classifiable under GRI 1, resort to an analysis under GRI 3(b) is unnecessary. However, since the trial court reached the correct result, mis-steps in its reasoning in arriving there are harmless errors. Pillowtex Corp. v. United States, 171 F.3d 1370, 1376 (Fed. Cir. 1999). Accordingly, we need not address Customs' remaining arguments pertaining to the "essential character" analysis under GRI 3(b).

## CONCLUSION

Because the Court of International Trade correctly classified the subject Calcu-Folios under Heading 4820.10.2020, we affirm.

## AFFIRMED