# United States Court of Appeals
# for the Federal Circuit

---

**VICTORIA'S SECRET DIRECT, LLC,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1468

---

Appeal from the United States Court of International Trade in No. 07-CV-0347, Chief Judge Timothy C. Stanceu.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**LERNER NEW YORK, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1469

---

Appeal from the United States Court of International Trade in No. 07-CV-0361, Chief Judge Timothy C. Stanceu.

———————————

Decided: October 16, 2014

———————————

FRANCES P. HADFIELD, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, New York, argued for plaintiffs-appellants. With her on the brief were ALAN R. KLESTADT and ROBERT B. SILVERMAN. Of counsel was ROBERT FLEMING SEELY.

BEVERLY A. FARRELL, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and AMY M. RUBIN, Acting Assistant Director.

———————————

Before MOORE, REYNA, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* TARANTO.

Dissenting Opinion filed by *Circuit Judge* REYNA.

TARANTO, *Circuit Judge.*

These related actions, which the Court of International Trade tried together, require the classification of certain clothing under the Harmonized Tariff Schedule of the United States (HTSUS). Specifically at issue are the Bra Top, which is imported by Victoria's Secret Direct, LLC, and the Bodyshaper, which is imported by Lerner New York, Inc. Both are sleeveless garments, made of knit fabric, worn as tops. Both are designed for two purposes, body coverage and bust support, providing enough of each

for a wide range of women to wear them in a wide range of public settings without needing a garment on top or a separate brassiere underneath. The Court of International Trade classified them under heading 6114 of the HTSUS, which covers "[o]ther garments, knitted or crocheted." *Lerner New York, Inc. v. United States*, 908 F. Supp. 2d 1313 (Ct. Int'l Trade 2013) ("*Lerner*"); *Victoria's Secret Direct, LLC v. United States*, 908 F. Supp. 2d 1332 (Ct. Int'l Trade 2013) ("*Victoria's Secret*").

Victoria's Secret and Lerner contend that the garments should have been classified under heading 6212, which covers "[b]rassieres, girdles, corsets, braces, suspenders, garters *and similar articles* and parts thereof." (Emphasis added). We reject classification of these items under heading 6212. The Bra Top and Bodyshaper are not "similar articles" under heading 6212 because they do not possess the unifying characteristics of the listed items in that heading. In this appeal, once heading 6212 is ruled out, the Bra Top and the Bodyshaper must be classified under heading 6114. And once heading 6114 is chosen, there is no dispute about which subheading applies to each garment. We therefore affirm the judgment of the Court of International Trade.

BACKGROUND

A

Both Victoria's Secret's Bra Top and Lerner's Bodyshaper were designed to be a combination of two garments: a camisole, which is similar to a tank top in covering the body from the waist to above the bust, but generally with narrower shoulder straps and a lower neckline; and a brassiere. The Bra Top and the Bodyshaper both contain a "shelf bra": an interior layer of fabric—whose upper edge is attached to the camisole and whose lower edge is an elastic band not attached to the camisole—that provides bust support, though to a lesser degree than many (though not all) brassieres. *See, e.g.*,

*Victoria's Secret* at 1339 n.7. This combination garment is "known in the apparel industry as a 'shelf bra camisole,'" a single garment designed so that many women will wear it in ordinary public settings without a layering garment on top or a separate brassiere underneath. *Id.* at 1340, 1343; *Lerner* at 1321, 1323.

"A shelf bra camisole is designed for two purposes, coverage and support." *Victoria's Secret* at 1343; *Lerner* at 1323. As to coverage, it has not been disputed here that the Bra Top and the Bodyshaper cover portions of the wearer's upper body for warmth and modesty. *See, e.g.,* Victoria's Secret J.A. 746 (plaintiffs' joint, post-trial proposed findings of fact, recognizing that both products are "garment[s] worn above the waist" whose "function . . . is to provide modesty or warmth"). The Court of International Trade made findings to that effect, stating that "[t]he uncontested facts establish that the [Bra Top and the Bodyshaper] provide[] partial covering of the wearer's torso for warmth and modesty." *Victoria's Secret* at 1355; *Lerner* at 1327; *see also Lerner* at 1321 ("One of the purposes of the Bodyshaper is to provide modesty to the wearer."). The degree of coverage is more than that provided by a "brassiere," as the term is ordinarily used, and the coverage is sufficient that the garment is designed generally to be worn in public without layers over the garment. *See Victoria's Secret* at 1341 ("Victoria's Secret markets the Bra Top as a wardrobe 'essential' that can be worn by itself as a top."); *Lerner* at 1321 ("The Bodyshaper is intended to be worn in public.").

As to body support, the parties disputed the degree to which—though not the fact that—the Bra Top and the Bodyshaper serve that purpose. Ultimately, the Court of International Trade found that the Bra Top and the Bodyshaper are "designed to provide support to the bust of the wearer" and in fact "provide[] a certain degree of such support when worn." *Victoria's Secret* at 1344; *Lerner* at 1324. The court found that, for both products,

the "cup, underbust band, and straps all work together to provide support to the wearer's bust" "in a manner identical to that of soft-cup brassieres." *Victoria's Secret* at 1343–44; *Lerner* at 1323. Because the garments provide some level of built-in support, "a separate brassiere . . . need not be worn underneath" the Bra Top or the Bodyshaper. *Victoria's Secret* at 1343; *Lerner* at 1323.

Victoria's Secret and Lerner, in marketing the Bra Top and Bodyshaper, emphasized the dual purposes of coverage *and* support. For example, the Court of International Trade found that "'[m]ost important' to Victoria's Secret, from 'a merchandising perspective,' is that the Bra Top provides the wearer '[t]he support of a bra and the use of a top in one.'" *Victoria's Secret* at 1341; *see also id.* at 1341–42 ("Victoria's Secret brought the Bra Top into its assortment 'because it was a top that provided support in lieu of a bra.'"). Similarly, the court found that "Lerner's website marketing materials for the Bodyshaper depict the garment being worn with pants or a skirt, and often with no layering garment being worn over the Bodyshaper," *Lerner* at 1320, and Lerner also identifies the "shelf-bra" aspect in marketing the Bodyshaper, Lerner J.A. 631.

B

Lerner imported a shipment of Bodyshapers in 2005, and Victoria's Secret imported a shipment of Bra Tops in 2006. The Bureau of Customs and Border Protection (CBP) classified Victoria's Secret's Bra Tops under subheading 6109.10.00 of the HTSUS, which has a 16.5% duty rate and covers "T-shirts, singlets, tank tops and similar garments, knitted or crocheted: Of cotton." On the other hand, CBP classified Lerner's Bodyshapers under subheading 6114.30.10, which has a 10.8% duty rate. The Explanatory Notes to the HTSUS describe heading 6114—which reads, "Other garments, knitted or crocheted"—as a residual provision that "covers knitted or

crocheted garments which are not included more specifically in the preceding headings of this Chapter." Explanatory Note 61.14.

Victoria's Secret and Lerner each protested under 19 U.S.C. § 1514, and CBP denied both protests. On November 21, 2007, the companies filed separate suits in the Court of International Trade, each contending that its merchandise should have been classified under subheading 6212.90.00, which has a 6.6% duty rate and reads:

> 6212: Brassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof, whether or not knitted or crocheted:
>
> * * *
>
> 6212.90.00: Other.

In the alternative, the two companies argued for classification under heading 6114.

The Court of International Trade—"[d]ue to the presence of common issues of fact," *Victoria's Secret* at 1337; *Lerner* at 1317—tried the cases together during a three-day bench trial. On May 1, 2013, the court issued an opinion and judgment in each case, classifying the Bra Top and the Bodyshaper under the residual garment provision, heading 6114. The court's analysis in each opinion proceeded in three steps, considering, in turn, whether the merchandise should be classified under the tank-top provision (heading 6109), the brassiere provision (heading 6212), and the residual garment provision (heading 6114).

The court first rejected the government's argument that the garments should be classified under heading 6109 as "tank tops" or as an article "similar" to "T-shirts, singlets, [and] tank tops." *Victoria's Secret* at 1351; *see Lerner* at 1325–26. The government does not appeal the court's determination that the Bra Top and the Body-

shaper are not properly classified under heading 6109. That heading therefore is not at issue in this appeal.

The Court of International Trade next addressed the brassiere provision, heading 6212, concluding that neither the Bra Top nor the Bodyshaper is "a garment of a type that is properly classified under heading 6212, HTSUS, being dissimilar to the garments listed in the article description with respect to the essential characteristic and as to purpose." *Victoria's Secret* at 1355; *Lerner* at 1328. The court examined the text of the heading, finding that "[a]ll of the exemplars in the heading 6212 article description—brassieres, girdles, corsets, braces, suspenders, and garters—have as their essential characteristic and purpose either support of a part of the body or support of a garment." *Victoria's Secret* at 1354; *Lerner* at 1327. Turning to the merchandise at issue, the court then found that, although the Bra Top and the Bodyshaper do "provide[] bust support," "it would be inconsistent with facts the court found in this case to conclude that support is *the* essential characteristic or purpose of" either garment. *Victoria's Secret* at 1354; *Lerner* at 1327 (emphasis in original in both opinions). The court added that it could not conclude that either the Bra Top or the Bodyshaper "*on the whole* is 'similar' to a brassiere or to any other garment or article named in the heading." *Victoria's Secret* at 1355; *Lerner* at 1328 (emphasis in original in both opinions). The court therefore rejected classification of the merchandise under heading 6212.

Having found classification improper under the tank-top provision and the brassiere provision, the Court of International Trade classified the Bra Top and the Bodyshaper under particular subheadings within heading 6114, the residual garment provision. Because the Bra Top is a blend of 95% cotton and 5% spandex, the court classified it under subheading 6114.20.00, which has a 10.8% duty rate for garments that come under heading 6114 and are made "[o]f cotton." *Victoria's Secret* at

1359–60. Because the Bodyshaper is a blend of two synthetic fibers, nylon and spandex, the court classified it under subheading 6114.30.10, which has a 28.2% duty rate for garments that come under heading 6114 and consist of "[t]ops" "[o]f man-made fibers." *Lerner* at 1332.

Victoria's Secret and Lerner timely appealed to this court, each arguing that its respective shelf bra camisole is "similar" to the items listed in heading 6212— "[b]rassieres, girdles, corsets, braces, suspenders, [and] garters"—and should therefore be classified as a "similar article[]" under the heading. This court has jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

"Proper classification of goods under the HTSUS entails first ascertaining the meaning of specific terms in the tariff provisions and then determining whether the subject merchandise comes within the description of those terms." *Millenium Lumber Distrib. Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009). The first step presents an issue of law decided here de novo, the second an issue of fact subject to clear-error review. *See id.*

"The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). "The classification of merchandise under the HTSUS is governed by the principles set forth in the [General Rules of Interpretation (GRIs)] and the Additional U.S. Rules of Interpretation." *Id.* We apply the GRIs in numerical order, *see CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011), so that if a particular Rule resolves the classification issue, we do not look to subsequent Rules, *see Lemans Corp. v. United States*, 660 F.3d 1311, 1316 (Fed. Cir. 2011).

GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." This case involves two shelf-bra camisoles—Victoria's Secret's Bra Top and Lerner's Bodyshaper—each a single garment designed for two purposes, coverage and support, and generally worn in public without need for a layering garment on top or a separate brassiere underneath. *Victoria's Secret* at 1340, 1343; *Lerner* at 1321, 1323. We must decide if these garments are "similar articles" under heading 6212 of the HTSUS, which covers "[b]rassieres, girdles, corsets, braces, suspenders, garters and similar articles."

The parties agree that the term "similar" in this case expressly invokes the interpretive principle of *ejusdem generis*, and we proceed on that premise.[1] What is required is identification of the unifying properties of the items listed in heading 6212, an issue of heading interpretation that is a question of law. This is a matter of common-sense assessment of the particular list and what unifies the items in that list—which may be the presence of certain properties and the absence of others. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 207–08 (2012) ("Consider the listed elements, as well as the broad term at the end, and ask what category would come into the reasonable person's mind."); *see also* 2A Norman Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:18 (7th ed. 2007) (*ejusdem generis* "rests . . . on practical insights about everyday language usage which guide our general

---

[1] When a general term ends a list of items in a statute, one circumstance in which the *ejusdem generis* principle does not apply to construing the general term is when the items "do not fit into any kind of definable category." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 209 (2012).

understanding about when two things are alike or different" and is not "merely an abstract exercise in semantics and formal logic"). Applying the phrase "and similar articles" to the merchandise at issue, then, requires determining whether the merchandise, considering all of its features, shares the unifying characteristics of the particular heading.

*Avenues in Leather, Inc. v. United States*, 178 F.3d 1241 (Fed. Cir. 1999), expresses this approach. "[F]or any imported merchandise to fall within the scope of the general term or phrase, the merchandise must possess the same essential characteristics or purposes that unite the listed examples preceding the general term or phrase." *Id.* at 1244. The first step is to "consider the common characteristics or unifying purpose of the listed exemplars in a heading." *Id.* The second is to consider the merchandise at issue with the identified unifying characteristics (or purpose) in mind. Classification of the merchandise within the heading "is appropriate only if" the merchandise shares the heading's unifying characteristics, and one way merchandise would fail to do so is by having "a more specific primary purpose that is inconsistent with the listed exemplars." *Id.*

*Avenues in Leather* confirms what is clear as a matter of common sense: the unifying characteristics may consist of both affirmative features and limitations. The reference to the merchandise's "primary purpose" as inconsistent with a particular heading's list recognizes that merchandise may well share affirmative features of the heading's list but have *other* features that then defeat "similarity"—necessarily meaning that the unifying characteristics of the heading's list include a limitation that excludes such other features (which may depend on their prominence). And, indeed, in referring to a purpose of the merchandise that is "inconsistent with" a heading's list, what the court in *Avenues in Leather* cited were cases that involved purposes that readily could be *added to* the

affirmative functions of the listed items. The additional purpose of the merchandise at issue in those cases could be deemed "inconsistent" only because a limitation on function or purpose was among the heading's unifying characteristics. *Id.* at 1244, citing *SGI, Inc. v. United States*, 122 F.3d 1468, 1472 (Fed. Cir. 1997) (heading covering a variety of cases did not cover coolers for storing and carrying food or beverages); *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1392–93 (Fed. Cir. 1994) (similar for pre-HTSUS heading of Tariff Schedule of the United States (TSUS)). The court's observation that the "analysis must consider the imported merchandise as a whole" reinforces the point: even if the merchandise at issue contains certain features shared by those listed in a heading, the presence of other features in the merchandise "as a whole" may negate similarity. *Avenues in Leather*, 178 F.3d at 1246.

What characteristics unify a heading's list—including what features are present in the listed items and what limits there are on the presence of other features— depends on the particular heading. For heading 6212, at issue here, we conclude that what unifies the list is that all of the listed items have support as their paramount function (whether for the body or for some other garment). "Brassieres, girdles, corsets, braces, suspenders, [and] garters" all share that characteristic. They provide body or other-garment support and do so as their paramount function; in particular, the primacy of that function is not overridden by an additional outerwear coverage function so significant as to dominate or even to be of roughly the same importance as the support function. This is a matter of common-sense interpretation of the ordinary meaning of the terms of the heading, which confirms the limitation as well as the positive functionality. And the use of the full term "similar *articles*" in heading 6212 indicates the need to compare the entire article at issue to those listed in the heading to determine if the article as a

whole, considering all of its features and functions, shares the unifying characteristic of those listed—here, the paramount function of support.

A few examples confirm the limitation inherent in the heading 6212 list. Certain garments not listed in the heading provide body support, but could not reasonably be considered in the same category as "[b]rassieres, girdles, corsets, braces, suspenders, [and] garters." Many evening gowns, specifically backless gowns, have built-in bust support sufficient to make a separate brassiere unneeded. Yet it is not reasonable to say that an evening gown is a "similar article[]"—an article of clothing similar to a brassiere or the others listed in heading 6212—and Victoria's Secret and Lerner agreed at oral argument. *See* Oral Argument at 4:00–5:05. Likewise, some jeans are designed to flatten, trim, and lift certain parts of the body. Such a pair of jeans cannot reasonably be called a "similar article" under heading 6212—an article similar to "[b]rassieres, girdles, corsets, braces, suspenders, [and] garters."

The Court of International Trade made findings that establish that the articles here did not have support as their paramount function, without a comparably important outerwear coverage function. After finding that the Bra Top and the Bodyshaper are "designed to provide support to the bust of the wearer," *Victoria's Secret* at 1344; *Lerner* at 1324, the court concluded that "it would be inconsistent with facts the court found in this case to conclude that body support is *the* essential characteristic or purpose" of either garment. *Victoria's Secret* at 1354; *Lerner* at 1327 (emphasis in original in both opinions). That finding must be understood in light of the series of findings about the dual functions of the garments, including prominently the function of outerwear coverage as a top. *E.g.*, *Victoria's Secret* at 1339–42; *Lerner* at 1319–21. And the court summed up its findings by saying that it could not conclude that either the Bra Top or the Body-

shaper "*on the whole* is 'similar' to a brassiere or to any other garment or article named in the heading." *Victoria's Secret* at 1355; *Lerner* at 1328 (emphasis in original in both opinions). The essence of these findings is that these dual-function garments have too much of the non-support function to share "*the* essential characteristic" of the items listed in heading 6212.

The evidence supports the finding that the Bra Top and the Bodyshaper do not share the unifying characteristic of heading 6212. The Court of International Trade noted the evidence, and none of the parties dispute, that both garments are "designed for two purposes, coverage and support." *Victoria's Secret* at 1343; *Lerner* at 1323. There was ample evidence that each garment is meant to be wearable in public without needing an additional layer. *See Victoria's Secret* at 1341 ("Victoria's Secret markets the Bra Top as a wardrobe 'essential' that can be worn by itself as a top."); *Lerner* at 1321 ("The Bodyshaper is intended to be worn in public."). Victoria's Secret and Lerner, in marketing their garments, gave at least comparable prominence to the ordinary outerwear coverage function as to the support function. *See Victoria's Secret* at 1341 ("'Most important' to Victoria's Secret, from 'a merchandising perspective,' is that the Bra Top provides the wearer '[t]he support of a bra and the use of a top in one.'" (alteration in original)); *Lerner* at 1320 ("Lerner's website marketing materials for the Bodyshaper depict the garment being worn with pants or a skirt, and often with no layering garment being worn over the Bodyshaper.").

Our precedents in this area show that the inquiry requires an analysis of particular headings and particular merchandise. In *Avenues in Leather*, the relevant unifying characteristics of HTSUS heading 4202 (as it then read) were, simply, "organizing, storing, protecting, and carrying various items." 178 F.3d at 1245. The merchandise at issue there had those characteristics and did not

have anything else "inconsistent" with any limitation found inherent in the 4202 list. *Id.* On the other hand, the merchandise did not come under HTSUS heading 4820 because the unifying characteristics of *that* heading were such as to preclude an item with "prominen[t] . . . organizing, carrying, and storing features," and only possible writing-related features in some configurations. *Id.* at 1245–46.

Earlier, in *Totes, Inc. v. United States*, 69 F.3d 495 (Fed. Cir. 1995), this court had similarly interpreted heading 4202 of the HTSUS as having "organizing, storing, protecting, and carrying various items" as unifying characteristics. *Id.* at 498. The merchandise at issue, a "rectangular case used to organize and store items such as motor oil, tools, and jumper cables in an automobile trunk," *id.* at 496, was "not removed from classification under [heading 4202] simply because it [was] intended to organize, store, and protect items associated with a motor vehicle," *id.* at 498. Distinguishing *Sports Graphics*, *supra*, a case decided under the TSUS, the court tied its discussion to the particular merchandise at issue and whether it had a specific purpose inconsistent with any limitation inherent in heading 4202. 69 F.3d at 498–99.

*Sports Graphics*, *supra*, had held that the merchandise at issue was not a "like article[]" under the TSUS provision (close to HTSUS heading 4202), because the merchandise "ha[d] a different purpose"—not merely a more specific one—than the listed examples. 24 F.3d at 1393. And in *SGI*, *supra*, decided after *Totes*, this court reiterated that the same conclusion applied to (the then-current language of) heading 4202 of HTSUS, finding that coolers for containing food and beverages were not "similar containers" under that heading. 122 F.3d at 1472–73. As in the present case, a purpose of the merchandise at issue was inconsistent with the heading because the unifying characteristics inherently limited the presence of

certain purposes, over and above requiring certain purposes. *See id.*

This heading-specific approach is especially appropriate under the HTSUS. In *JVC Co. of America v. United States*, 234 F.3d 1348 (Fed. Cir. 2000), we rejected a pre-HTSUS "doctrine" the courts had created that imposed a reading on all listings of a certain sort (the so-called "more than" doctrine), rather than discerning the natural meaning of the words of each particular listing. *Id.* at 1353–54. We reasoned that such judicially imposed "rules of interpretation" were not proper under the HTSUS, which supplies its own defined principles of interpretation. *Id.* The lesson is that the analysis of what is "similar" under a heading depends on what is listed in that particular heading. The task is language interpretation in context, not judicial imposition by doctrine. *Cf. Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1432–33 (2014) (in contract-law setting, distinguishing doctrine imposing result from context-specific interpretation). Our heading-specific analysis performs the required interpretive task.

For those reasons, we reject Victoria's Secret's and Lerner's challenges to the Court of International Trade's holding that the Bra Top and the Bodyshaper are outside heading 6212. That conclusion ends this appeal. Heading 6109, though once at issue in these cases, no longer is. There is no basis for rejecting the residual provision, heading 6114, once headings 6212 and 6109 are rejected. And Victoria's Secret and Lerner do not dispute the choice of subheadings if heading 6114 applies.

CONCLUSION

We affirm the judgment of the Court of International Trade.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**VICTORIA'S SECRET DIRECT, LLC,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1468

---

Appeal from the United States Court of International Trade in No. 07-CV-0347, Chief Judge Timothy C. Stanceu.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**LERNER NEW YORK, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1469

---

Appeal from the United States Court of International Trade in No. 07-CV-0361, Chief Judge Timothy C. Stanceu.

---

REYNA, *Circuit Judge*, dissenting.

The majority reaches its decision by rewriting the fundamental principles of a long established doctrine of statutory construction and by invoking an approach for classification of articles that this court soundly overruled. The majority's analysis invokes a "sounds right to me" approach that is decidedly at odds with established rules of tariff classification interpretation established by law and followed by this court. For this and other reasons set forth below, I respectfully *dissent*.

I

When Congress adopted the Harmonized Tariff Schedule of the United States ("HTSUS") in 1988, it explicitly provided that HTSUS provisions "shall be considered to be statutory provisions of law for all purposes." The Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, § 1204(c), 102 Stat. 1107, 1149. Included within the HTSUS is a "statutorily-prescribed, comprehensive, and systematic method of classification" known as the General Rules of Interpretation ("GRI"). *JVC Co. of Am. v. United States*, 234 F.3d 1348, 1354 (Fed. Cir. 2000); *see also* Pub. L. No. 100-418, § 1204(a). Under GRI 1, classification decisions must be made "according to the terms of the headings and any relative section or chapter notes[.]" GRI 1. Thus, in tariff classification cases, we are required by statute to begin with the heading that most closely resembles the imported product and construe the terms in that heading "according to their common and commercial meanings." *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 644 (Fed. Cir. 2013).

The majority deviates from this statutorily-mandated method of classification by rewriting the canon of statutory construction known as *ejusdem generis*, which limits the scope of general terms or phrases to items that are similar to those specifically enumerated in the statute. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2171 n.19 (2012). Although the majority does not reverse the trial court's decision, it essentially sidesteps the trial court's extensive factual findings and rejects its analysis in favor of an unduly narrow construction of the *ejusdem generis* principle. The majority improperly focuses on an article's "paramount" function instead of its essential characteristics and, in doing so, violates the precept that *ejusdem generis* should not be invoked to "narrow, limit or circumscribe an enactment." *Sandoz Chem. Works, Inc. v. United* States, 50 CCPA 31, 35 (1963).

The principle of *ejusdem generis* provides that general terms and phrases should be limited to matters "similar in type to those specifically enumerated." *Fed. Maritime Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 734 (1973) (citations omitted); *see also Paroline v. United States*, 134 S. Ct. 1710, 1721 (2014). In the tariff classification context, an imported article falls within the scope of a general term or phrase if it possesses the same essential characteristics that unite the listed exemplars. *See, e.g., Deckers Corp. v. United States*, 532 F.3d 1312, 1316 (Fed. Cir. 2008). The Bureau of Customs and Border Protection ("Customs") has consistently classified imported articles *ejusdem generis* if the articles are "designed," "intended," or "principally used" in the same manner or fashion as the listed exemplars.[1]

---

[1]     *See, e.g.*, Classification of a Support Garment from China or Australia, N253321 (Cust. & Border Prot. May 30, 2014); Classification of a Silk Capelet from China, HQ

The majority agrees with the trial court that the essential function unifying the exemplars listed in heading 6212 is to provide support to either the body or to some other garment. Maj. Op. at 11. The majority also does not take issue with the trial court's extensive factual findings showing that an essential feature of both the Bra Top and the Bodyshaper is to provide support. *See, e.g., Victoria's Secret Direct, LLC v. United States*, 908 F. Supp. 2d 1332, 1340-45 (Ct. Int'l Trade 2013); *Lerner New York, Inc. v. United States*, 908 F. Supp. 2d 1313, 1320-24 (Ct. Int'l Trade 2013). The court summarized its findings with a principal finding of fact that both garments are "designed to provide support to the bust of the wearer" and that both garments do, in fact, provide "a certain degree of such support." *Victoria's Secret*, 908 F. Supp. 2d at 1345; *Lerner*, 908 F. Supp. 2d at 1324. The Government concedes on appeal that an essential purpose of the garments is to provide support. *Victoria's Secret* Appellee Br. 12; *Lerner* Appellee Br. 11. Under *ejusdem generis*, these garments are therefore classifiable as "similar articles" under heading 6212 because they share the essential characteristics of the listed exemplars. Here, the inquiry should end.

The majority nevertheless fails to classify these garments under heading 6212 because it finds that support is, at best, coequal to the garments' coverage function. Maj. Op. at 11. The majority misconstrues our precedent, which holds that additional but not inconsistent characteristics do not prevent the *ejusdem generis* classification of an article. As we noted in *Avenues in Leather, Inc. v. United States*, once an article is found to share the essential characteristics of the listed exemplars, "only an

967889 (Cust. & Border Prot. Feb. 1, 2006); Classification of Kidney or Back Belt, HQ 952827 (Cust. & Border Prot. Dec. 16, 1992).

inconsistent specific primary purpose will prevent classification under that heading." 178 F.3d 1241, 1245 (Fed. Cir. 1999). The presence of dual functions does not by itself prevent an imported article from being classified *ejusdem generis*, a principle recognized by Customs in its decisions. *See* Classification of Kidney or Back Belt, HQ 952827 (Cust. & Border Prot. Dec. 16, 1992) (classifying a kidney and back belt under heading 6212 despite having the dual function of providing warmth and support). Hence, if support is in fact an essential characteristic of the Bra Top and Bodyshaper, the presence of an additional coverage or warmth function should not defeat their classification as "similar articles."

By allowing additional but not inconsistent features to trump similarity, the majority implicitly revives a tariff classification doctrine long found to be inapplicable to the HTSUS. Under the so-called "more than" doctrine, which arose under the old Tariff Schedule of the United States, an imported article that shares features of a listed exemplar is not classifiable under that heading if the article contains additional "nonsubordinate or coequal" functions or characteristics. *See, e.g., Digital Equip. Corp. v. United States*, 889 F.2d 267, 268 (Fed. Cir. 1989); *Avenues in Leather*, 178 F.3d at 1245-46. We held in *JVC Co. of America v. United States* that the "more than" doctrine was supplanted by the General Rules of Interpretation and thus does not apply to cases arising under the HTSUS. 234 F.3d at 1354.

The majority nevertheless revives the "more than" doctrine by holding that the presence of additional features may negate similarity:

> The court's observation that the "analysis must consider the imported merchandise as a whole" reinforces the point: even if the merchandise at issue contains certain features shared by those listed in a heading, the presence of other features

in the merchandise "as a whole" may negate similarity.

Maj. Op. at 11 (quoting *Avenues in Leather*, 178 F.3d at 1246). The majority further engages in a classic application of the "more than" doctrine by concluding that the Bra Top and Bodyshaper "have too much of the non-support function to share '*the* essential characteristic' of the items listed in heading 6212." Maj. Op. at 13. We held in *JVC Co. of America* that such an analysis is not proper under the HTSUS and explicitly overruled the portion of *Avenues in Leather* cited by the majority. 234 F.3d at 1353-54. The majority's decision thus contradicts our precedent allowing merchandise to be classifiable as a particular article even if it possesses additional features or functions.[2] Under the proper standard, the additional coverage function of the Bra Top and Bodyshaper cannot by itself defeat the garments' classification as "similar articles" under heading 6212.

## II

The majority attempts to sidestep this precedent by reading an implicit limitation into the characteristics of the exemplars listed in heading 6212:

> [The listed exemplars] provide body or other-garment support and do so as their paramount function; in particular, the primacy of that function is not overridden by an additional outerwear coverage function so significant as to dominate or even to be of roughly the same importance as the support function.

---

[2]    Indeed, this is precisely the purpose of the "other" and the "all other" classification headings, to capture articles similar but neither identical to nor the same as the articles expressly identified by the heading or sub-heading.

Maj. Op. at 11. But by focusing its analysis on "paramount functions" instead of "essential characteristics," the majority is in effect rewriting the *ejusdem generis* principle. Our precedent requires an *ejusdem generis* analysis to compare the essential characteristics of listed exemplars with those of the imported article. The term "essential" is defined in Webster's Third New International Dictionary as "constituting an indispensable structure, core, or condition of a thing," and "may suggest that the matter in question involves the very essence, or being or real nature, of whatever is concerned." Webster's Third New Int'l Dictionary 777 (Unabridged ed. 2002). This definition does not preclude an article from having more than one "essential" characteristic. The term "paramount," on the other hand, is defined as "having a higher or the highest rank or authority" and "superior to all others." *Id.* at 1638. By definition, only one feature or function of an article can be "paramount." Hence, the majority improperly narrows the *ejusdem generis* analysis by focusing on the "paramount function" of the listed exemplars instead of their essential characteristics.

The majority's assumption that the unifying characteristics of the listed exemplars inherently limit the presence of other features is also at odds with the exemplars themselves. Many of the listed exemplars, including brassieres, girdles, corsets, and garters, provide some level of coverage and warmth to the wearer. Changes in fashion also allow for some of these articles to be worn as outerwear. As Customs has recognized, "a garment which is otherwise designed and intended to provide support in the manner of a bra will not be precluded from classification as such *merely because it will be seen when worn.*" Classification of T-Back Sports Bras, HQ 951264 (Cust. & Border Prot. July 1, 1992) (emphasis added). Customs has noted that "it is now acceptable to let brassieres that have been embellished in some manner show under outerwear or even be worn by themselves." Classification

of Decorated Brassiere, HQ 954488 (Cust. & Border Prot. Oct. 6, 1993). Hence, the majority errs when it concludes that the coverage function of the Bra Top and Bodyshaper is inconsistent with the essential support characteristic of the listed exemplars. Maj. Op. at 14-15.

The majority's reliance on anecdotal examples related to evening gowns and jeans is not helpful and does not support its finding of an inherent limitation in heading 6212. Maj. Op. at 12. The traditional *ejusdem generis* analysis would not require classification of evening gowns and jeans under this heading just because these garments happen to provide some support to the wearer. To be classifiable under this heading, the trial court would first need to make a factual finding that support is an essential characteristic—*i.e.*, a core and indispensable element—of the article and that the article does not have a more specific primary purpose that is inconsistent with those characteristics. Without such factual findings, the majority's hypotheticals are neither relevant nor illuminating.

In contrast to the majority's abstract examples, the trial court made extensive factual findings showing that an essential feature of the Bra Top and Bodyshaper is to provide support. *See, e.g.*, *Victoria's Secret*, 908 F. Supp. 2d at 1340-45; *Lerner*, 908 F. Supp. 2d at 1320-24. The court summarized its findings with a principal finding of fact that both garments are "designed to provide support to the bust of the wearer" and that both garments do, in fact, provide "a certain degree of such support." *Victoria's Secret*, 908 F. Supp. 2d at 1345; *Lerner*, 908 F. Supp. 2d at 1324. The majority does not find clear error in these findings and thus presumably admits that support is an essential feature of these garments. Once such a finding is made, only an inconsistent specific primary purpose will remove the article from the general term. The majority fails to point to an inconsistent specific primary purpose of the garments, and the presence of a coequal

coverage function consistent with the garments' support function does not defeat classification under heading 6212. The majority, in its failure to classify the Bra Top and Bodyshaper as "similar articles" under heading 6212, departs from the traditional *ejusdem generis* analysis and, in essence, rejects its application as an interpretive principle in classification cases.

## III

In sum, the majority misconstrues the requirements of an *ejusdem generis* analysis, unduly limits the scope of general terms and phrases, and contradicts precedent by reviving a once-defunct doctrine of classification law. The majority's revision of the *ejusdem generis* requirements is more than a small change. Similar to changing the course of a nautical heading by a few degrees, a revision of tariff classification rules will oft lead to unintended destinations. Here, the majority's rewriting of the *ejusdem generis* principle will create unnecessary confusion in future classification cases and a high degree of unpredictability in the marketplace. For these reasons, I *dissent*.