# United States Court of Appeals for the Federal Circuit

---

**OTTER PRODUCTS, LLC,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2015-1866

---

Appeal from the United States Court of International Trade in No. 1:13-cv-00269-CRK, Judge Claire R. Kelly.

---

Decided: August 24, 2016

---

LOUIS STEFAN MASTRIANI, Adduci, Mastriani & Schaumberg, LLP, Washington, DC, argued for plaintiff-appellee. Also represented by MUNFORD PAGE HALL II, BEAU JACKSON, DANA WATTS, GIANG TONTHAT.

BEVERLY A. FARRELL, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellant. Also represented by BENJAMIN C. MIZER, JEANNE E. DAVIDSON, AMY M. RUBIN; BETH C. BROTMAN, Office of Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and

Border Protection, United States Department of Homeland Security, New York, NY.

––––––––––––––

Before PROST, *Chief Judge,* O'MALLEY, and CHEN, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

The United States appeals the judgment of the United States Court of International Trade rendered on cross motions for summary judgment in which the court classified the subject merchandise, imported by Otter Products, LLC ("OtterBox"), under subheading 3926.90.9980 of the Harmonized Tariff Schedule of the United States ("HTSUS") as "[o]ther articles of plastics" instead of as "similar containers" under HTSUS subheading 4202.99.00. *See Otter Products, LLC v. United States*, 70 F. Supp. 3d 1281 (Ct. Int'l Trade 2015). We *affirm*.

BACKGROUND

A. The Subject Merchandise

OtterBox is the owner and importer of record of the subject merchandise. The specific goods at issue are durable and protective cases designed for certain styles of smartphones—Blackberry Curve 9220, 9310, and 9320; iPhone 4S; Samsung i500; and the HTC4 My Touch—and an iPod touch, 4th generation. The cases consist of two styles: the Commuter and the Defender Series. There is no dispute as to which merchandise is at issue.

OtterBox described the Commuter Series cases as "durable protective products comprised of two basic pieces: a silicone mid-layer and, most importantly, a rigid outer plastic shell." *Otter Products*, 70 F. Supp. 3d at 1286 (citation and internal quotation marks omitted). The Commuter Series cases "have a smooth exterior, designed to allow them to slide easily in and out of pockets." *Id.* (citation and internal quotation marks omitted).

"[T]he plastic components of these cases 'do not cover or enclose the screen' of the device but do allow the consumer 'the option of affixing to the screen of the electronic device a thin, plastic, self-adhesive film to protect the screen.'" *Id.* (citation omitted).

OtterBox described the Defender Series cases as consisting of four pieces: "a clear protective plastic membrane, a high-impact polycarbonate shell, a plastic belt clip holster, and a durable outer silicone cover." *Id.* (citation and internal quotation mark omitted).

All of the cases at issue were imported into the United States through the port of Memphis, Tennessee between April 23, 2012, and July 11, 2012. *Id.* at 1284.

### B. Customs' Classification

Customs classified the cases as "similar containers" under HTSUS subheading 4202.99.00 with a duty rate of 20% *ad valorem*. The relevant portions of HTSUS Heading 4202 are:

> 4202
>
> Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, insulated food or beverage bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper:

4202.99

Other:

Of materials (other than leather, composition leather, sheeting of plastics, textile materials, vulcanized fiber or paperboard) wholly or mainly covered with paper:

4202.99.9000

Other.........................................................20%

OtterBox paid duties at the 20% *ad valorem* rate, and the goods were liquidated between March 8, 2013, and May 24, 2013, at that rate. OtterBox timely protested the liquidation of the entries and sought accelerated disposition. The protest was deemed denied on August 1, 2013.

### C. Court of International Trade Decision

OtterBox filed a complaint in the Court of International Trade contesting the denial of its protest under 19 U.S.C. § 1515. Joint Appendix ("J.A.") 39. Therein, OtterBox alleged that the subject merchandise should have been classified as "other articles of plastics" under HTSUS subheading 3926.90.99, at a duty rate of 5.3% *ad valorem*. J.A. 49. The parties filed cross-motions for summary judgment.

In a decision dated May 26, 2015, the Court of International Trade granted OtterBox's motion, finding that the cases are not classifiable as "similar containers" under Heading 4202, but instead are properly classified under Heading 3926, as other articles of plastics. At the outset, the court noted that, because there is no genuine dispute as to the physical nature of the goods, the analysis "focuses on the legal question of whether heading 4202, HTSUS, is the proper tariff heading for the subject merchandise, or if not, which other heading, including 3926, HTSUS, is the proper heading." *Otter Products*, 70 F. Supp. 3d at 1287. The Court of International Trade explained that,

because the goods are not listed *eo nomine* (by name) in Heading 4202, the relevant inquiry is whether the cases are "similar containers" to the exemplars listed therein. *Id.* at 1288. The court concluded that they are not. *Id.* The Court of International Trade explained that, to fall under the general phrase "similar containers," the merchandise must possess the same essential characteristics or purposes that unite the exemplars. *Id.* Pursuant to this court's precedent, the Court of International Trade noted that four characteristics unite the exemplars of Heading 4202: organizing, storing, protecting, and carrying. *Id.* at 1289 (citing *Avenues In Leather, Inc. v. United States* (*Avenues III*), 423 F.3d 1326, 1331 (Fed. Cir. 2005)).

The Court of International Trade began its analysis by looking to the common dictionary definition of the phrase "similar container," which requires that the merchandise be a "receptacle or object, which resembles or is of a like nature or kind to the listed exemplars, and is designed or has the capacity to contain, store, or hold certain articles." *Id.* at 1288–89. The court found that "the Commuter and Defender Series cases do not fall within the common or commercial meaning of the phrase 'similar containers'" because each of the objects listed in Heading 4202 "allow an article to be placed inside them and/or taken out without much effort by opening or closing the receptacle." *Id.* at 1289. "In contrast, the cases at issue are specifically designed for and fit snuggly [sic] over particular electronic devices . . . . It takes some effort to remove a case from an electronic device where the case generally remains on the device in a semi-permanent manner." *Id.*

The Court of International Trade found that, although the subject cases protect, they do not organize, store, or carry. Next, the Court of International Trade agreed with OtterBox that the exemplars in Heading 4202 have another characteristic that the Commuter and Defender

Series cases do not share: "the inability to use items when inside those containers." *Id.* at 1292. While the listed examples "are not ones which permit the use of the enclosed item," the electronic devices enclosed by the subject merchandise "retain their full, 100 percent functionality while inside an OtterBox case." *Id.* (citation and internal quotation marks omitted). Accordingly, the fact that the electronic device remains fully functional is inconsistent with objects enclosed by the exemplars listed in Heading 4202.

The court concluded that OtterBox satisfied its burden of showing that the cases are not classifiable in Heading 4202. The court then found that the subject merchandise is properly classifiable under Heading 3926 because both the Commuter Series and Defender Series cases are made of materials listed in chapter 39. Specifically, the Commuter Series consists of two basic components: the rigid outer plastic shell and the silicone midlayer. *Id.* at 1294. The Defender Series consists of four pieces: "a clear protective plastic membrane, a high-impact polycarbonate shell, a plastic belt clip holster, and a durable outer silicone cover." *Id.* Because none of the specific subheadings in chapter 39 refer to the subject merchandise, the Court of International Trade found that it is properly classified under 3926.90.9980: "[o]ther articles of plastics." *Id.* at 1295. The court therefore granted OtterBox's motion for summary judgment and denied the government's cross-motion. The government timely appealed to this court.

## DISCUSSION

"We review a grant of summary judgment by the Court of International Trade for correctness as a matter of law and decide de novo the proper interpretation of the tariff provisions as well as whether there are genuine issues of material fact to preclude summary judgment."

*Millenium Lumber Distrib. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009).

We employ the same standard employed by the Court of International Trade in assessing Customs' classification determinations. *LeMans Corp. v. United States*, 660 F.3d 1311, 1315 (Fed. Cir. 2011). A classification decision involves two steps. First, the court must "ascertain[] the meaning of specific terms in the tariff provisions." *Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102, 1106 (Fed. Cir. 2014) (quoting *Millenium*, 558 F.3d at 1328). Second, the court determines "whether the subject merchandise comes within the description of those terms." *Id.* "Determining the proper meaning of terms is a question of law that we review *de novo*, while determining whether the item fits within such meaning is a question of fact that we review for clear error." *Avenues III*, 423 F.3d at 1330. When there is no dispute as to the nature of the merchandise, the two-step classification analysis "collapses entirely into a question of law." *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006).

While we accord deference to a classification decision "relative to its 'power to persuade,' we have 'an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms.'" *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 644 (Fed. Cir. 2013) (citations omitted).

The HTSUS scheme "is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). The proper classification of merchandise entering the United States is governed by the General Rules of Interpretation ("GRIs") of the HTSUS and the Additional United States

Rules of Interpretation. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998).

We apply the GRIs in numerical order, beginning with GRI 1, which provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." *La Crosse Tech. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013). Where an "imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative." *Id.* (quoting *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011)).

According to GRI 1, the HTSUS headings and section or chapter notes govern the classification of a product. *Kahrs*, 713 F.3d at 644. Absent contrary legislative intent, we construe HTSUS terms according to their common and commercial meanings, which we presume are the same. *Id.* "To discern the common meaning of a tariff term, we may consult dictionaries, scientific authorities, and other reliable information sources." *Id.* After consulting the headings and section or chapter notes, we may also consult the World Customs Organization's Explanatory Notes, which accompany each chapter of the HTSUS. *LeMans*, 660 F.3d at 1316. Although the Explanatory Notes are not legally binding, they are "persuasive" and are "generally indicative" of the proper interpretation of the tariff provision. *Id.* (citation omitted).

Here, the parties dispute whether the cases at issue are properly classifiable under Heading 4202 or Heading 3926. As noted above, Heading 4202 covers, *inter alia,* "[t]runks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers." Heading 3926 covers "[o]ther articles of plastics and articles of other materials of head-

ing 3901 to 3914." The Chapter Notes provide that "chapter [39] does not cover . . . trunks, suitcases, handbags or other containers of heading 4202." Note 2(m) to ch. 39, HTSUS. Thus, if the imported cases are properly classifiable under Heading 4202, they cannot be classified under Heading 3926 (which is part of Chapter 39).

Heading 4202 is an *eo nomine* provision, which means that it describes goods according to their specific name. *La Crosse*, 723 F.3d at 1358. It is undisputed that the protective cases at issue here are not named in Heading 4202. Accordingly, to be classified within Heading 4202, the merchandise must fall into the category of "similar containers."

Interpreting the term "similar containers" requires an *ejusdem generis* analysis to determine if the goods are "of the same kind" as those listed in the heading. *Totes, Inc. v. United States*, 69 F.3d 495, 498 (Fed. Cir. 1995). "In classification cases, *ejusdem generis* requires that, for any imported merchandise to fall within the scope of the general term or phrase, the merchandise must possess the same essential characteristics or purposes that unite the listed exemplars preceding the general term or phrase." *Avenues III*, 423 F.3d at 1330.

A court must first "consider the common characteristics or unifying purpose of the listed exemplars in a heading." *Victoria's Secret,* 769 F.3d at 1107 (quoting *Avenues in Leather, Inc. v. United States* (*Avenues I*), 178 F.3d 1241, 1244 (Fed. Cir. 1999) (internal quotation marks omitted)). The court can then "consider the merchandise at issue with the identified unifying characteristics (or purpose) in mind." *Id.* "Classification of imported merchandise under *ejusdem generis* is appropriate only if the imported merchandise shares the characteristics or purpose and does not have a more specific primary purpose that is inconsistent with the listed exemplars." *Avenues I,* 178 F.3d at 1244. We have previously held

that the "common characteristic or unifying purpose of the goods in heading 4202 consists of 'organizing, storing, protecting, and carrying various' items." *Avenues III*, 423 F.3d at 1332 (quoting *Avenues in Leather, Inc. v. United States* (*Avenues II*), 317 F.3d 1399, 1402 (Fed. Cir. 2003)).

On appeal, the government argues that the Court of International Trade committed three reversible errors. First, the government maintains that the court erred by placing a restriction on the meaning of the term "container" that is not found in dictionary definitions: requiring a concurrent and simple physical action to gain access. Second, while the court did not formally hold that "similar containers" under Heading 4202 must satisfy all four *ejusdem generis* factors (organizing, storing, protecting, and carrying), the government argues that the court effectively imposed such a requirement. Finally, the government argues that, even if "similar containers" must satisfy all four factors, the Court of International Trade erred by requiring that they satisfy the additional characteristic of preventing anything from being operational while in the containers.

OtterBox responds that the Court of International Trade correctly determined that the products at issue: (1) are not "containers"; (2) do not share all of the four essential characteristics of goods listed in Heading 4202; and (3) have a specific purpose that is fundamentally inconsistent with the listed exemplars. Accordingly, the subject merchandise is precluded from classification in Heading 4202.

## A. The Subject Merchandise Is Not a "Container"

To be classifiable in Heading 4202, OtterBox's products must be "containers." The word "container" is not defined in the HTSUS or in the legislative history. The Court of International Trade therefore looked to the parties' proposed dictionary definitions, including the

government's preferred definitions: "a thing in which material is held or carried; receptacle" and "a thing that contains or can contain something; box, crate, can, jar, etc." *Otter Products*, 70 F. Supp. 3d at 1289. The government also cited the definition of "contain" meaning "to have within; enclose." *Id.* Looking to the list of examples in Heading 4202, the court concluded that "each of these objects allow an article to be placed inside them and/or taken out without much effort by opening or closing the receptacle." *Id.*

On appeal, the government argues that there "is no requirement that a box, crate, or receptacle require a physical action to gain access." Appellant Br. 17. According to the government, some of the specific exemplars identified in Heading 4202—such as spectacle cases or holsters—may be open at the top. The government maintains that, because "articles classifiable under Heading 4202 cannot be constrained in the manner that the trial court held, such a construction of 'container' constitutes legal error." *Id.* And, the government asserts that, because electronic devices are held inside or are enclosed by the cases at issue, each case itself is a "container" under the common meaning of the word.

The Court of International Trade noted that the items listed in the government's definition of "container"—"box, crate, can, jar"—"all require some concurrent and relatively simple act to gain access to the receptacle (i.e., twisting a lid, lifting a cover)." *Otter Products*, 70 F. Supp. 3d at 1289. In contrast, the cases at issue "are specifically designed for and fit snuggly [sic] over particular electronic devices and do not require an action to open or uncover the item." *Id.* To that end, the court noted that "it is more common to think of the cases as an addition/accessory to the electronic device which can be added to or removed at the consumer's liking." *Id.* at 1289–90. The court further found that the cases only "minimally resemble containers." *Id.* at 1292.

Although the government argues that the court erred in its construction of "container," the Court of International Trade recognized that assessing the word "container" to determine the meaning of "similar container" is only a starting point and that "some of the problems that arise from describing the electronic device cases as containers foreshadow the problems that will arise with trying to classify the cases as 'similar containers' under heading 4202, HTSUS." *Id.* at 1289. Thus, while the trial court did note that the examples indicate that "containers," as used in Heading 4202, implies something which encases something else, the court did not end its inquiry there nor even rely heavily on that fact. This approach is consistent with our case law, which requires that the court first ascertain the meaning of the specific terms in the tariff provision, and then determine whether the goods come within the description of those terms. *Kahrs*, 713 F.3d at 644. Accordingly, we see no error in the court's analysis.

### B. The Subject Merchandise Is Not a "Similar Container"

As noted, for the Commuter and Defender Series cases to fall under the general phrase "similar containers," they must "possess the same essential characteristics or purposes that unite the listed exemplars preceding the general term or phrase." *Avenues III*, 423 F.3d at 1332. Also, as noted, the "common characteristic or unifying purpose of the goods in heading 4202 consists of 'organizing, storing, protecting, and carrying various' items." *Avenues III*, 423 F.3d at 1332 (quoting *Avenues II,* 317 F.3d at 1402).

The parties dispute whether the subject merchandise must possess all four of the characteristics uniting the exemplars, or merely one of them, in order to be classified as "similar containers" under Heading 4202. The parties agree, however, that this court has not directly addressed the issue. The Court of International Trade found it

unnecessary to answer the question "because, in this case, coverings which minimally resemble containers, serve a protective purpose, and may at times serve some carrying purpose, while allowing full functionality of the enclosed merchandise are not 'similar containers.'" *Otter Products*, 70 F. Supp. 3d at 1292–93.

On appeal, the government argues that this court's precedent provides "support for the conclusion that the four characteristics are disjunctive." Appellant Br. 11. In support of this proposition, the government points to three Federal Circuit decisions: *Outer Circle Products v. United States*, 590 F.3d 1323, 1326 (Fed. Cir. 2010) (finding that where the subject articles "organize, store, protect, *or* carry food or beverages," they cannot be classified under heading 4202 as no item in 4202 involves containment of any food or beverage) (emphasis added); *Len-Ron Manufacturing Co. v. United States*, 334 F.3d 1304, 1313 (Fed. Cir. 2003) ("[T]he essential characteristics of the articles falling within subheading 4202.32 are that they generally organize, store, protect, *or* carry items.") (emphasis added) (citing *Totes*, 69 F.3d at 498); and *SGI, Inc. v. United States*, 122 F.3d 1468, 1472 (Fed. Cir. 1997) ("The additional exemplars in HTSUS that the Court of International Trade states makes the provision broader than the comparable luggage provision under TSUS also do not include containers that organize, store, protect, *or* carry food or beverages.") (emphasis added). The government also cites two Court of International Trade decisions to support its position that the test is disjunctive: *Processed Plastic Co. v. United States*, 395 F. Supp. 2d 1296 (Ct. Int'l Trade 2005) (stating that "merchandise can be classified under heading 4202 even if it serves only one of the four stated purposes"); and *Jewelpak Corp. v. United States*, 97 F. Supp. 2d 1192 (Ct. Int'l Trade 2000). *But see Victoria's Secret*, 769 F.3d at 1109 (stating that the relevant unifying characteristics for Heading 4202 are "organizing, storing, protecting, *and* carrying various items"

(quoting *Avenues I*, 178 F.3d at 1245) (emphasis added); and *Totes*, 69 F.3d at 498 (noting that the essential characteristics are "organizing, storing, protecting, *and* carrying") (emphasis added)).

This court has yet to hold expressly that a product must share all four unifying characteristics to qualify as a "similar container" under Heading 4202 or that sharing some specific subset of those four characteristics is sufficient. We take this opportunity to clarify that there is no requirement that the subject merchandise meet all four characteristics to qualify as a "similar container" under Heading 4202. Courts should consider the four characteristics collectively and then determine whether, in light of those considerations, the classification would lead to an inconsistency. If, for example, an item met only one of the four characteristics, it almost certainly would not qualify as a "similar container" under Heading 4202. Allowing a single factor to satisfy the inquiry would, in almost all conceivable scenarios, render the scope of "similar containers" so broad that it would lead to absurd results and make consistent application of the standard all but impossible. *See* Appellee Br. 15 ("If items were classifiable in the heading as 'similar containers' so long as they organized, stored, protected, <u>or</u> carried something, there would be almost no limit to the reach of the heading."). It would, moreover, divorce consideration of the individual characteristics from any consideration of a unifying purpose, making the latter virtually impossible to define.

As explained below, the Court of International Trade engaged in the correct analysis. It correctly found that the subject cases satisfy only one of the four characteristics and have an essential purpose that is inconsistent with the exemplars of Heading 4202.

### 1. Organize

First, the Court of International Trade held that the cases "do not serve any organizational purpose" because

they "can and do only hold one electronic device." *Otter Products*, 70 F. Supp. 3d at 1290. The court explained,

> Even if it is possible to organize a single item without reference to another item, the electronic devices are not any more organized when they are in the cases. Rather, once the sole electronic device is placed inside the cases, it remains one article surrounded by the case that acts like a suit of armor. The electronic device is just as organized, tidy, arranged, or orderly before it is placed in the cases as it is after.

*Id.*

On appeal, the government argues that the Court of International Trade ignored the fact that some of the exemplars of Heading 4202—including camera cases, binocular cases, and holsters—each may hold only a single article. *See* Appellant Br. 18. But OtterBox presented evidence that each of these exemplars often contain multiple items. Appellee Br. 17 ("Camera cases often contain extra lenses, batteries, cables, and memory cards. Binocular cases often contain straps, cleaning cloths, lens caps, and other accessories. Gun cases and holsters may contain multiple guns and rounds of ammunition."). The same is true for the other exemplars in Heading 4202.

The government cites *Processed Plastics* for the proposition that "simply 'containing' items is at least a rudimentary form of organization." 395 F. Supp. 2d at 1309. As the Court of International Trade found, however, the organizational capacity of the backpacks and beach bags at issue in *Processed Plastics* "cannot be equated to the cases at issue here." *Otter Products*, 70 F. Supp. 3d at 1293. In *Processed Plastics*, it was undisputed that the backpacks were used to carry multiple items and "the beach bag is large enough to allow several lightweight items to be organized and stored inside it, in much the same manner as the backpacks." 395 F. Supp. 2d at 1313.

In a subsequent Court of International Trade decision, moreover, the court specifically stated that, "[i]n the context of heading 4202, organization implies multiple items placed together in a single container." *Firstrax*, 2011 Ct. Int'l Trade LEXIS 132, at *18 (collecting cases). We agree with the Court of International Trade that organization requires at least the possibility of storing multiple items. Unlike the subject merchandise at issue in *Processed Plastics*, the cases here contain a single item: an electronic device.

### 2. Store

The Court of International Trade found that the cases also do not possess the essential characteristic of "storing." Specifically, the Court of International Trade noted that the common understanding of "store" implies setting something aside—"[i]t does not include present use but looks toward using whatever item is stored in the future." *Otter Products*, 70 F. Supp. 3d at 1290.

According to the government, the cases serve the purpose of "storing" because they are "keeping the enclosed devices safe while in the pockets, backpacks or handbags of their owners until their next use." Appellant Br. 19. As such, the government maintains, the cases satisfy the court's definition. We disagree.

The government's argument conflates protection and storage, but they are different. Satisfying the former is not the same as satisfying the latter. As the Court of International Trade correctly found, "an important characteristic of the subject cases is allowing the electronic device to remain fully functional, so that it may be used while inside the subject case." *Otter Products*, 70 F. Supp. 3d at 1290. We agree that, because the devices remain fully functional, the cases do not comport with the common understanding of the term "storing."

### 3. Protect

It is undisputed that the electronic cases at issue protect. *Id.* ("[T]he parties do not dispute that the subject cases 'protect.'").

### 4. Carry

The Court of International Trade acknowledged that the Defender Series cases contain a belt clip that "provide[s] minimal carrying functionality for the electronic devices." *Id.* But "the belt clips are removable and, even when connected, are only used or usable for brief periods where the user is in motion and has determined to place the electronic device in the belt clip, as opposed to a pocket." *Id.* at 1290–91.

On appeal, the government argues that all of the cases satisfy the "carry" factor because "electronic devices are held within the cases." Appellant Br. 20. The government submits that "carry" is defined as "to hold or support while moving." *Id.* (citing Webster's New World College Dictionary 215 (Third College Ed. 1976)). As OtterBox points out, although the cases at issue "remain in place while the user moves, . . . they add nothing to the carrying capability that the electronic device, standing alone, would not already have." Appellee Br. 20. If anything, the electronic device "carries" the case. We agree with the Court of International Trade that the subject merchandise simply does not "carry" anything for purposes of being classified under Heading 4202.

### 5. The Court of International Trade Did Not Add a Fifth Factor

As noted, "[c]lassification of imported merchandise under *ejusdem generis* is appropriate only if the imported merchandise shares the characteristics or purpose [unifying the named exemplars] and does not have a more specific primary purpose that is inconsistent with the listed exemplars." *Avenues I*, 178 F.3d at 1244; *see also*

*Victoria's Secret*, 769 F.3d at 1108 ("[E]ven if the merchandise at issue contains certain features shared by those listed in a heading, the presence of other features in the merchandise 'as a whole' may negate similarity."). Applying this precedent, the Court of International Trade found that the subject merchandise has a specific and primary purpose that is inconsistent with the named exemplars: "that the enclosed electronic device remains fully functional." *Otter Products*, 70 F. Supp. 3d at 1291. In other words, while the listed exemplars hold items and do not permit use of the enclosed item, the cases are specifically designed to hold and protect an electronic device while it remains 100% functional. The court found that this characteristic is inconsistent with the purposes of the exemplars in Heading 4202 and therefore distinguishes the subject merchandise from those exemplars.

The government argues that the Court of International Trade "erroneously and impermissibly added a new factor to this Court's four factor *ejusdem generis* analysis for Heading 4202, *i.e.*, a requirement that a 'contained' article must be removed for use." Appellant Br. 14. According to the government, the Court of International Trade "ignored" the fact that some camera cases and binocular cases permit use of the enclosed item." *Id.* at 16. But the Court of International Trade considered the government's arguments and found that they "miss the point." *Otter Products*, 70 F. Supp. 3d at 1294. Although the government cited two Customs rulings classifying an underwater camera case as a "similar container," the Court of International Trade explained that camera cases are "*eo nomine* listed unlike electronic device cases and neither of these rulings discuss the four uniting essential characteristics or purposes of heading 4202, HTSUS." *Id.* Accordingly, the government's attempts to rely on nonbinding Customs rulings that do not pertain to the merchandise at issue are unpersuasive.

The Court of International Trade correctly considered whether the obvious purpose of the cases at issue differed from the purposes of those expressly listed. That consideration did not impose a fifth characteristic, as the government contends; it simply completed the appropriate analysis, which requires a comparison of "purpose." Again, we find no error in the court's analysis.

## C. Classification under Subheading 3926.90.99

The Court of International Trade held that, because the subject merchandise cannot be classified under Heading 4202, it should be classified according to its material. The court then determined that the proper classification is subheading 3926.90.99: "[o]ther articles of plastics." *Id.* at 1295. The government does not challenge the Court of International Trade's conclusion that, if the subject cases are not classified in Heading 4202, they are properly classified in subheading 3926.90.99.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the Court of International Trade in which the court classified the subject merchandise imported by OtterBox under subheading 3926.90.9980 of the HTSUS.

## **AFFIRMED**