# United States Court of Appeals for the Federal Circuit

---

**SIGVARIS, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-2237

---

Appeal from the United States Court of International Trade in No. 1:11-cv-00532-JCG, Judge Jennifer Choe-Groves.

---

Decided: August 16, 2018

---

JOHN MICHAEL PETERSON, Neville Peterson LLP, New York, NY, argued for plaintiff-appellant. Also represented by RUSSELL ANDREW SEMMEL.

ALEXANDER J. VANDERWEIDE, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by CHAD A. READLER, JEANNE E. DAVIDSON, AMY RUBIN; BETH C. BROTMAN, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY.

---

Before PROST, *Chief Judge,* DYK and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Sigvaris, Inc. ("Sigvaris") appeals the judgment of the United States Court of International Trade in which the court found that the subject merchandise is not classified as duty free under the Harmonized Tariff Schedule of the United States ("HTSUS")[1] subheading 9817.00.96 as articles specially designed for the use or benefit of physically handicapped persons. *Sigvaris, Inc. v. United States*, 227 F. Supp. 3d 1327 (Ct. Int'l Trade 2017). Although the Court of International Trade erred in its analysis, we conclude that it reached the correct result. We therefore affirm its holding that the subject merchan-

---

[1] Because the subject merchandise was imported between 2008–10, we cite to the HTSUS provisions at issue at the time of importation. *See LeMans Corp. v. United States*, 660 F.3d 1311, 1314 n.2 (Fed. Cir. 2011). There were no relevant changes to the relevant HTSUS provisions during this time. Moreover, HTSUS subheading 9817.00.96 implements the United States' obligations under the Nairobi Protocol on the Importation of Educational, Scientific, and Cultural Materials ("Nairobi Protocol"). *U.S. Customs Serv. Implementation of the Duty-Free Provisions of the Nairobi Protocol, Annex E, to the Florence Agreement* ("*Customs Implementation*"), T.D. 92-77, 26 Cust. B. & Dec. no. 35 (Treas. Dep't Aug. 26, 1992). The Nairobi Protocol is an international agreement that encourages trade in articles for the handicapped by "expanding duty-free treatment to articles for the use or benefit of the physically or mentally handicapped persons." *Id.*

dise does not qualify for duty-free treatment under HTSUS subheading 9817.00.96.

## I. BACKGROUND

### A. The Subject Merchandise

Sigvaris is the owner and importer of record of the subject merchandise. The specific goods at issue are graduated compression hosiery from three product lines—the 120 Support Therapy Sheer Fashion series for women, the 145 Support Therapy Classic Dress series for women, and the 185 Support Therapy Classic Dress series for men. All of the product lines exert 15–20 millimeters of mercury ("mmHg") of compression onto the wearer.

The 120 series consists of a variety of models, including pantyhose, maternity pantyhose, thigh-high hosiery, calf-length hosiery, and calf-length hosiery with open toe. These models are "made of a combination of nylon and spandex, and in some products, also silicone." *Id.* at 1331. The 145 series and 185 series "are calf-length graduated support dress socks made of a combination of nylon and spandex." *Id.* at 1327. Graduated compression hosiery "when properly worn, forces pooled blood to circulate out of the leg and throughout the body." Appellant's Br. at 3.

### B. Customs's Classification

Between September 2008 and November 2010, Sigvaris imported 105 entries of various graduated compression merchandise, including the subject merchandise, into the United States at the Port of Atlanta, in Georgia. Customs liquidated the entries between August 2009 and September 2011.

Customs classified the subject merchandise as "[o]ther graduated compression hosiery: . . . [o]f synthetic fibers" under HTSUS subheading 6115.10.40 subject to a duty rate of 14.6% *ad valorem*. *Id.* at 1330.

Sigvaris timely protested the classification of the subject merchandise, and sought "special classification" as duty free under HTSUS subheading 9817.00.96. That subheading states:

9817

Articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons; parts and accessories (except parts and accessories of braces and artificial limb prosthetics) that are specially designed or adapted for use in the foregoing articles:

9817.00.96

Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Free

Customs denied the protest on December 12, 2011. Sigvaris paid liquidated duties according to Customs's classification but challenged the classification by filing a complaint in the Court of International Trade.

### C. Court of International Trade Decision

Sigvaris's complaint alleged that the subject merchandise should have been entitled to special classification as duty free under HTSUS subheading 9817.00.96. The government maintained that Customs properly classified the subject merchandise. The parties filed cross-motions for summary judgment.

In a decision dated May 17, 2017, the Court of International Trade denied Sigvaris's motion for summary judgment and granted the government's cross-motion for summary judgment with respect to the classification of the subject merchandise, which it held was properly classified by Customs under HTSUS subheading 6115.10.40 as "[o]ther graduated compression hosiery: . . . [o]f synthetic fibers."

The Court of International Trade began its analysis by ascertaining the proper meaning and scope of the terms under HTSUS heading 9817. To determine the meaning of "physically . . . handicapped persons," the Court of International Trade consulted Subchapter Note 4(a) to Chapter 98, which provides that the term "includes any person suffering from a permanent or chronic[,] physical or mental impairment which substantially limits one or more major life activities, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working." *Sigvaris*, 227 F. Supp. 3d at 1335.

To determine the scope and meaning of "specially designed," the Court of International Trade consulted dictionaries to conclude that "articles specially designed for handicapped persons must be made with the specific purpose and intent to be used by or benefit handicapped persons rather than the general public." *Id.*

Next, the Court of International Trade considered whether the subject merchandise qualifies as duty free under the above definitions of the terms contained in HTSUS heading 9817. Sigvaris had argued that the subject merchandise should be classified as duty free because it is designed to benefit persons who suffer from Chronic Venous Disorder ("CVD"), which is "a mechanical problem of the lower limbs that results in a deficiency in the flow of blood due to weak, damaged, or otherwise compromised veins." *Id.* at 1337. Accordingly, in its analysis, the Court of International Trade "determine[d] first whether CVD constitutes a physical handicap," *id.*, and then "next whether [Sigvaris]'s compression hosiery is specially designed for the use of physically handicapped persons," *id.* at 1338.

Following this framework, the Court of International Trade found that only the more severe stage of CVD, known as Chronic Venous Insufficiency ("CVI"), consti-

tutes a physical handicap, but that early stages of CVD do not. *Id.* at 1337. It based its finding on the fact that "[s]evere cases of CVI can interfere with and impair certain life functions, such as walking, standing, and working," *id.* at 1331, whereas patients suffering from "early stages" of CVD are ambulatory and able to perform daily tasks, *id.* at 1338.

The Court of International Trade then determined that the subject merchandise is not specially designed for the physically handicapped because it is designed for patients suffering from early stages of CVD and not for patients suffering from CVI. In reaching this conclusion, the Court of International Trade found significant that Sigvaris's own advertising materials state that the subject merchandise is not for patients who are bedridden or immobilized.

Thus, the Court of International Trade denied Sigvaris's motion for summary judgment seeking classification of the subject merchandise as duty free under HTSUS subheading 9817.00.96, and granted the government's motion for summary judgment classifying the subject merchandise under HTSUS subheading 6115.10.40. Sigvaris appeals. This court has jurisdiction to review the Court of International Trade's decision under 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

"We review the Court of International Trade's grant or denial of summary judgment for correctness as a matter of law, deciding de novo the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." *United States v. Am. Home Assurance Co.*, 789 F.3d 1313, 1319 (Fed. Cir. 2015). "We employ the same standard employed by the Court of International Trade in assessing Customs' classification determinations." *Otter Prods., LLC v. United States*, 834 F.3d 1369, 1375 (Fed. Cir. 2016).

A classification determination involves two steps. First, we must "ascertain[] the meaning of specific terms in the tariff provisions." *Id.* (quoting *Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102, 1106 (Fed. Cir. 2014)). Second, we must determine "whether the subject merchandise comes within the description of those terms." *Id.*

The HTSUS scheme "is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). General Rules of Interpretation ("GRIs") of the HTSUS govern the proper classification of merchandise entering the United States and are applied in numerical order.[2] *Id.* According to GRI 1, we look first to the HTSUS headings and any relevant section or chapter notes. *Otter Prods.*, 834 F.3d at 1375. We construe terms from the HTSUS according to their common and commercial meanings, which we presume are the same. *Id.* We may consult dictionaries, scientific authorities, and other reliable information sources to discern the common meanings. *Id.*

We conclude that the Court of International Trade reached the correct result, but that it should have focused more narrowly on the "persons" for whose use and benefit the subject merchandise is specially designed. We also find that it construed the term "specially designed" too

---

[2] The Additional U.S. Rules of Interpretation ("ARIs") also bear on the classification analysis. *See Schlumberger*, 845 F.3d at 1163 & n.5. However, it is not necessary for us to reach the ARIs in this case, because, even though HTSUS heading 9817 is a use provision, no aspect of the ARIs is dispositive of the issues raised here.

broadly.[3] We apply the correct analysis and interpretation below to find that the subject merchandise is not specially designed for the use or benefit of any class of persons, let alone physically handicapped persons. We therefore affirm the Court of International Trade's ultimate holding that the subject merchandise is not classifiable under HTSUS subheading 9817.00.96.

---

[3] The government argues that this court need not consider whether the subject merchandise is classifiable under HTSUS heading 9817 because it is undisputed that HTSUS heading 6115 describes the subject merchandise in its entirety. Appellant's Br. at 12. We agree that it is undisputed that the subject merchandise may be classified under HTSUS heading 6115, but we disagree that this means that the subject merchandise cannot also be classified as duty free. Rather, we interpret the HTSUS provisions and chapter notes to mean that HTSUS heading 6115's duty rate does not apply if the subject merchandise is also entitled to duty free classification under HTSUS heading 9817. Note 1 of ch. 98, HTSUS ("The provisions of this chapter are not subject to the rule of relative specificity in general rule of interpretation 3(a). Any article which is described in any provision in this chapter is classifiable in said provision if the conditions and requirements thereof and of any applicable regulation are met."); *see also* GRI 3(a) (providing that "[w]hen . . . goods are . . . classifiable under two or more headings, . . . [t]he headings which provides the most specific description shall be preferred to headings providing a more general description."). Thus, a finding that the subject merchandise is classifiable under HTSUS heading 6115 does not end the inquiry where a party requests duty-free treatment under HTSUS heading 9817.

### A. The Inquiry Begins with the "Persons" for Whose Use & Benefit the Merchandise Is "Specially Designed"

As provided above, HTSUS subheading 9817.00.96 allows for duty-free classification of "[a]rticles specially designed . . . for the use or benefit of . . . physically . . . handicapped persons." The parties dispute whether the relevant inquiry under this subheading should focus on the *disorder* that the subject merchandise purportedly addresses or, instead, on the *persons* for whose use and benefit the subject merchandise is "specially designed." The Court of International Trade began its inquiry by first determining that only CVI, the more severe stage of CVD, constitutes a physical handicap, and next, considering whether the subject merchandise is specially designed for the use and benefit of persons suffering from CVI.

Sigvaris contends that the Court of International Trade erred in its approach and that the appropriate inquiry is "whether there is a handicap that the subject merchandise is 'specially designed' to address," and not on "the degree of symptoms a particular sufferer may be experiencing." Appellant's Br. at 17. According to Sigvaris, "HTSUS 9817.00.96 focuses on the nature of the handicap, not on the person." Reply Br. at 11.

The government argues that Sigvaris's interpretation of the heading is incorrect because it allows "articles that are not specially designed for persons with a condition that substantially limits their ability to perform a major life activity" to "nevertheless be afforded duty-free status" so long as the importer "show[s] that the 'condition' may, in some people, present with severe and debilitating symptoms." Appellee's Br. at 27.

We generally agree with the government. Under Sigvaris's suggested approach, it would not matter that persons with early stage CVD may not be physically handicapped, so long as some persons who use the subject

merchandise happen to have a version of CVD which does qualify as a handicap. Such an approach is too broad and ignores the "specially designed" language of the heading. The plain language of the heading focuses the inquiry on the "persons" for whose use and benefit the articles are "specially designed," and not on any disorder that may incidentally afflict persons who use the subject merchandise. We therefore find Sigvaris's approach inconsistent with the plain language of the heading.

We also find the Court of International Trade's approach at the outset, focused on the wrong question. The Court of International Trade began its analysis by asking whether CVD is a handicap. But this approach not only incorrectly focuses the inquiry on who suffers from an alleged disorder, and to what degree, but it also presupposes that the subject merchandise is "specially designed" at all. Instead, we must ask first, "for whose, if anyone's, use and benefit is the article specially designed," and then, "are those persons physically handicapped?" Here, because we find that the subject merchandise is not "specially designed" under our interpretation of the term, we conclude that the subject merchandise is not classifiable under HTSUS heading 9817 and therefore not entitled to duty-free treatment under HTSUS subheading 9817.00.96.

### B. The Subject Merchandise Is Not "Specially Designed" for the Use or Benefit of Any Class of Persons

The HTSUS does not provide a definition for "specially designed," but, as noted above, we may consult dictionary definitions to discern the common meaning of the term. Webster's Third International Dictionary defines "specially" as "particularly," which, in turn, is defined as "to an extent greater than in other cases or towards others." *Specially*, Webster's Third International Dictionary (2002); *Particularly*, Webster's Third International

Dictionary (2002). "Designed" is defined as something that is "done, performed, or made with purpose and intent often despite an appearance of being accidental, spontaneous, or natural." *Designed*, Webster's Third International Dictionary (2002); *accord Marubeni Am. Corp. v. United States*, 35 F.3d 530, 534 (Fed. Cir. 1994) (defining "designed" as "done by design or purposefully opposed to accidental or inadvertent; intended, planned"). The Court of International Trade relied on these dictionary definitions to conclude that "articles specially designed for handicapped persons must be made with the specific purpose and intent to be used by or benefit handicapped persons rather than the general public." *Sigvaris*, 227 F. Supp. 3d at 1336. While this reading of "specially designed" is accurate as far as it goes, it is incomplete; it does not consider that the subject merchandise must be designed for the use or benefit of a class of persons *to an extent greater* than for others.

We conclude that, to be "specially designed," the subject merchandise must be intended for the use or benefit of a specific class of persons to an extent greater than for the use or benefit of others. This definition of "specially designed" is consistent with factors that Customs uses in discerning for whose use and benefit a product is "specially designed." Customs considers "the physical properties of the merchandise, whether the merchandise is solely used by the handicapped, the specific design of the merchandise, the likelihood the merchandise is useful to the general public, and whether the merchandise is sold in specialty stores." *Id.* at 1337 (citing Customs Implementation, 28 Cust. Bull. & Dec. at 242–45). These factors aid in assessing whether the subject merchandise is intended for the use or benefit of a specific class of persons to a greater extent than for the use or benefit of others. Accordingly, we adopt them in our analysis below.

Here, the Court of International Trade's findings of fact demonstrate that the subject merchandise is not

specially designed for the use or benefit of any specific class of persons, and instead, is designed for use by a variety of persons. One of the defining physical properties of the subject merchandise is that it exerts only 15–20 mmHg of compression, which Sigvaris's medical expert testified "is only slightly greater than ordinary socks." *Id.* at 1339. Similarly, Sigvaris's advertising materials confirm that compression garments that exert compression of 15–20 mmHg are best suited for persons with "(1) heavy, fatigued, tired legs; (2) prophylaxis during pregnancy; (3) prophylaxis for legs predisposed to risk; and (4) long hours of standing or sitting." *Id.* Sigvaris's expert further elaborated on this, stating that "target consumers for hosiery with 15–20 mmHg of compression are 'people who have a profession or live a lifestyle that results in tired, achy, heavy feeling in their legs' and 'people who are sitting for prolonged periods of time,' such as people who take long flights in an airplane or drive long distances." *Id.* Sigvaris's advertising materials also state that these "products really appeal to people with an active lifestyle," and that "[n]ot only do they promote healthy legs, but they are also fashionable." J.A. 42. Thus, Sigvaris's own evidence demonstrates that the subject merchandise is generally designed for the use or benefit of a variety of persons, including those who lead an active lifestyle, are in professions that require sitting for long periods of time, are pregnant, or desire fashionable hosiery.

Sigvaris argues that the subject merchandise is specially designed for the use and benefit of patients suffering from CVD. But none of the evidence introduced by Sigvaris indicates that the subject merchandise was designed for use by patients suffering from CVD to an extent greater than it is intended for use by others. And, while the Court of International Trade found that the subject merchandise "impart[s] levels of compression that can alleviate CVD symptoms," *id.* at 1332, that fact does

no more than establish that the subject merchandise incidentally alleviates certain symptoms in people suffering from CVD. Such incidental benefits do not establish that a product is "specially designed" under the definition that we adopt.

Thus, the subject merchandise is not specially designed for the use or benefit of a specific class of persons. We need not assess, therefore, if the persons who might use the subject merchandise are physically handicapped persons.

## CONCLUSION

Although the Court of International Trade erred in its analysis, we find that it reached the correct result for the reasons stated above. Thus, we affirm its conclusion that the subject merchandise is not classifiable under HTSUS heading 9817 and therefore not entitled to duty-free treatment under HTSUS subheading 9817.00.96.

### AFFIRMED

## COSTS

No costs.